**Julius GORDON et al., Appellants,**

v.

**COMMISSIONERS' COURT OF JEFFER-SON COUNTY et al., Appellees.**

**No. 6183.**

Court of Civil Appeals of Texas.

Beaumont.

Jan. 16, 1958.

Rehearing Denied Feb. 12, 1958.

Adams & Browne, Beaumont, for appellants.

Frank M. Adams, Asst. Dist. Atty., Beaumont, for appellees.

ANDERSON, Justice.

Appellants, Julius Gordon and Sam Landrum, who are resident, tax-paying citizens of Jefferson County, brought suit against said county and its judge, commissioners, commissioners' court, and treasurer to enjoin them permanently from expending for highway right of way along a proposed route through the City of Beaumont money that has derived to the county from the sale of county bonds. Judgment denying them relief was rendered at the conclusion of

their direct evidence, on motion of the defendants.

If plans and specifications that have been prepared or are in process of being prepared by the State Highway Department for an additional prong to an expressway that has in part been completed and is in part under construction through the City of Beaumont are approved by said city, the county proposes to purchase right of way for the additional prong and to do so with proceeds of county bonds that were issued under authority conferred at an election that was held on November 6, 1956. And if the additional prong is constructed, Highways 69, 96, and 287, which now are routed through Beaumont along 11th Street, will be routed along the expressway. Appellants own or own interests in business property on 11th Street, said property being known as the Gaylynn Shopping Center, and they represent that a re-routing of the mentioned highways will cause their property to depreciate in value, as well it may. If re-routed as proposed, the highways will pass considerably west of Gaylynn Shopping Center, will touch 11th Street nowhere except at the street's extreme north end, and even there they will afford no direct entry into the street for southbound traffic.

Appellants contend that, because of commitments and representations that were made by the county and by the City of Beaumont prior to the bond election, the county is obligated to use the proceeds of the bonds for purposes other than the one now contemplated, is without lawful authority to use any of the money to purchase the right of way in question and is estopped from expending any of the money in such manner. They take the position that, in the vicinity involved, the money can be lawfully expended for right of way for none but the aforesaid highways and that none of it can be lawfully expended for right of way for those highways except as the highways are routed along 11th Street. And in support of this position, they argue that a resolution that was adopted by the Commissioners' Court of Jefferson County after the bond election had been ordered, but before the election was held, and one that was adopted by the City Council of Beaumont more than two years before the order for the election was passed must be construed together, and that together the resolutions constituted a promise by the Commissioners' Court to the voters that, in the affected area, only right of way along 11th Street would be purchased with proceeds of the bonds as right of way for Highways 69, 96, and 287, or at least for Highway 69.

We shall presently quote from the resolutions just referred to, but at this point we deem it well to state that, as reflected by the election order and notices, the specific question that was before the voters for determination was that of whether county road bonds in the amount of $10,400,000 should be issued "for the contruction, maintenance and operation of macademized, gravel or paved roads and turnpikes, or in aid thereof, including the acquisition of rights-of-way in and throughout Jefferson County, Texas, and the levying of an ad valorem tax in payment thereof."

The election order was made on October 5, 1956. The resolution by the Commissioners' Court to which reference has been made was adopted three days later, or on October 8, 1956. It pertained to work that had been done and to a report that had been made by a committee of citizens that had been appointed by the Commissioners' Court to study Jefferson County's highway system and to make recommendations in reference thereto. The report had been before the Commissioners' Court since April 27, 1956. In addition to expressions of appreciation for the committee's work, the resolution contained the following pertinent items:

"Commissioners' Court hereby pledges itself to carry out the program as has been outlined and recommended by the committee to the very best of its ability. No bond money under this

program will be spent in any city or town until the plans and specifications for said project have been approved by the governing body of the city.

"No money raised by the bond issue for this program will be expended for any project other than the projects recommended until every project recommended by the citizens committee has been completed."

To the extent we need to take note of it, the report by the committee of citizens was as follows: "Your Citizens Advisory Committee recommend that right-of-way be secured for the roads in the 1954 plans of the Highway Department for Jefferson County giving first priority to Highway 73 as that will be the first project to start construction."

A list of what appears to have been considered by the committee as the highways and roads or parts thereof covered by its recommendations was filed with the report. The highways with which we are concerned were listed in this manner: "Highway 69—96—287—L.N.V.A. Canal to Port Arthur."

The "1954 plans of the Highway Department for Jefferson County" to which the report referred were plans which the State Highway Department, at the request of the Commissioners' Court, had prepared for a comprehensive and integrated system of highways for Jefferson County. The plans were prepared as of December, 1954. They proposed a re-routing of Highways 69, 96, and 287 that would cause those highways to follow the general course of the right of way that is involved in this suit. The matter was dealt with in this manner:

"U. S. Highways 69, 96 & 287 between State Highway 105 and the new U. S. Highway 90 Expressway in Beaumont now follow 11th Street. Adequate right of way for an ultimate six lane facility with frontage roads will be difficult and expensive to acquire if the location along 11th Street is retained. It also will be difficult to arrange for

interchange of traffic at the junction with U. S. Highway 90. The plan proposes that U. S. Highways 69, 96 & 287 follow 16th Street extended north to an intersection with 11th Street thence along 11th Street to St. Highway 105."

The resolution by the City Council of Beaumont that is relied upon by appellants was adopted on August 17, 1954. The State Highway Department had theretofore proposed to the City that Highways 69, 96, and 287 be re-routed as now contemplated and was insisting that the City consent to the change. We quote the following from the minutes of the Council's meeting:

"Mayor Beard stated that on August 7th, a letter had been received from the State Highway Department which was in regard to the City's position on what has come to be known as the North Prong of the Expressway system of the City of Beaumont. He said this letter was in regard to a minute order which was previously presented to the City and which died for lack of action on the part of the City Council in regard to it. The letter requested that the Council reconsider that minute order as their plans for the expressway system from 16th Street northward to the city limits of Beaumont.

"Mayor Beard said the Council has given that lots of discussion and study and had decided to adopt a policy in connection with that particular project as well as some of the other projects in connection with the freeway system in the city limits, and that he would like to present it at that time.

"Motion was made by Mayor Beard that the City Council make as a matter of public record the following objectives:

\* \* \* \* \* \*

"(3) The retention of the route of Highway 69 (11th Street) from the city limit line on the north to the U. S. 90 Freeway and the designation of the

11th Street South from the Freeway as alternate 69, 96, and 287.

"(4) The adoption of a long range plan for the widening and improving of 11th Street from the north city limits to U. S. Highway 90 Freeway in conformity with proposed state improvements north of Beaumont when such improvement becomes necessary."

"The motion was seconded by Councilman Cokinos.

"In answer to a question by Mrs. C. N. Kolter as to if this means the Council is for the opening of Gladys Street now, Mayor Beard told her that that is exactly when it means, that the Council is going on record as that for their program and would negotiate for it.

"Roll call: Ayes: All Nayes: None."

There was, so far as the record discloses, no official retraction or alteration by the City Council of the foregoing declaration of policy and objectives prior to the time at which the bond election was held.

 The major legal premise of appellants' argument is undoubtedly a correct one. The Commissioners' Court cannot lawfully use proceeds of the bonds for purposes other than those for which the bonds were voted, or at least not until the purposes for which the bonds were voted have been either effected or provided for; and, in determining the purposes for which the bonds were voted, we must look not only to the election order and notices, but to the resolution the Commissioners' Court adopted on October 8, 1956, as well. Moore v. Coffman, 109 Tex. 93, 200 S.W. 374; Black v. Strength, 112 Tex. 188, 246 S.W. 79. Appellees concede as much. Even so, however, and even though, as was held in the Moore-Coffman case, the proceeds of bonds that have been voted to build a particular structure at a particular place cannot lawfully be used to build the structure at a different place, appellants still did not,

in our opinion, prove a meritorious cause of action. They failed as a matter of law, we think, to prove either that purchase of the particular right of way is outside the purposes for which the bonds were voted or that any pre-election promise or representation that will be breached by purchase of the right of way with proceeds of the bonds was made by the Commissioners' Court to the citizenship of Jefferson County.

 Without the declaration of policy and objectives that was made by the City Council of Beaumont on August 17, 1954, there is no basis at all in the record for holding that the proceeds of the bonds cannot lawfully be used to purchase the right of way if the city consents to the purchase and approves plans and specifications for the project that is contemplated. And we are of the opinion that the declaration must be disregarded. There is, to our minds, no evidence to show that the Commissioners' Court ever adopted the declaration or acted in reference to it, and we think it axiomatic that in this state of the record the declaration cannot bind the county and its officers or work an estoppel against them and cannot affect the county's right to purchase the right of way with proceeds of the bonds. It was no part of the bond proposition that was voted upon nor of any pre-election promise or representation that is shown to have been made by the Commissioners' Court.

Appellants urge that by its resolution of October 8, 1956, the Commissioners' Court impliedly approved and adopted the declaration or at least committed itself to the policy and objectives recited in the declaration, but with this we cannot agree. Such an effect is claimed by appellants for the following provision of the court's resolution: "No bond money under this program will be spent in any city or town until the plans and specifications for said project have been approved by the governing body of the city." We are unable, however, to see in that provision any implied reference to the Beau-

mont City Council's declaration of August 17, 1954, or anything from which to imply an intent on the part of the Commissioners' Court to commit itself to any past act or declaration by the governing body of any city or town in the county. We see in it little if anything more than a promise by the Commissioners' Court not to undertake any highway project within the corporate limits of any city or town in the county without the consent and approval of the governing body of the affected municipality, and the law would impose that limitation or restriction, even without the resolution. If any implication regarding the route for Highways 69, 96, and 287 is to be read into or from the resolution, we think it must be held that the Commissioners' Court rejected the 11th Street route and approved the route that is now contemplated. This follows from the Court's having committed itself to carry out the recommendations of the committee of citizens, which recommendations were that the 1954 plans of the State Highway Department be carried out, and from the fact that the State Highway Department's 1954 plans provided for the route in question rather than for the 11th Street route. The fact that in listing the highways and parts of highways covered by its recommendations the committee of citizens listed Highways 69, 96, and 287 in this manner, "Highway 69—96—287—L.N.V.A. Canal to Port Arthur", does not, in our opinion, affect the question. The committee was identifying over-all projects and was not itself endeavoring to specify particular routes. See, in this connection, Mosel v. Real, Tex.Civ.App., 49 S.W.2d 475.

■ Although we entertain no doubts about the correctness of the foregoing conclusions, we nevertheless add that in our opinion the result would not be different if the City Council's declaration were to be given consideration. For one thing, the declaration dealt with only the route for Highway 69 north of where the expressway now crosses 11th Street and therefore could constitute no barrier to use of proceeds of the bonds to purchase the right of way in question as right of way for Highways 96 and 287. For another, the declaration only set out objectives to be worked for, the implication being that those objectives might not be attained and that in that event something else might be agreed to. We also add that, even though they may have acquired or improved their property in the expectation that Highways 69, 96, and 287 would continue to be routed along 11th Street, appellants have no such vested interests in the present routing of those highways as can affect the State Highway Department's right to re-route them. Elliott v. Ely, Tex. Civ.App., 58 S.W.2d 839.

■ Appellees pleaded that by ordinance adopted on September 3, 1957, which was the day this suit was filed, the City Council of Beaumont authorized the county to purchase the right of way in question. Appellants have undertaken on appeal to challenge the validity of the ordinance, but we think the question is not before us for review. The ordinance was not offered in evidence and no ruling by the trial judge in reference to it is presented by the record. Furthermore, the record rather conclusively establishes that in rendering judgment the trial judge disregarded the ordinance, and we have ourselves given no consideration to it. Such of the appellants' points of error as are directed at the ordinance are therefore held to be without merit.

At appellants' request, the trial judge filed findings of fact and conclusions of law, his sole conclusion of law being that the suit was premature. Appellants now complain of that conclusion of law, which was based on the theory that up to the time of trial the City Council of Beaumont had not approved plans and specifications for the additional prong to the expressway, and the county proposed to await such approval before purchasing the right of way.

■ The record leaves it doubtful that the trial judge based his judgment al-

together on the aforesaid conclusion of law. The case was not dismissed; instead, judgment was rendered denying appellants relief. For this reason, and since we were of the opinion that, when considered as a whole, the record permitted us to do so, we have passed upon the basic questions involved in the suit. We deem it unnecessary, therefore, that we determine whether or not the trial judge was technically correct in concluding that the case was premature.

No reversible error having been presented, the judgment of the trial court is affirmed.

On Rehearing.

Although we may not have made our own views on the subject entirely clear in the original opinion, there was and is no evidence to show that the county proposes, or has proposed, to undertake purchasing the right of way without the consent of Beaumont's City Council. There is, therefore, no sound basis for appellants' contention—made in their motion for rehearing—that, there being no evidence to show that the City Council has consented for the county to purchase the right of way, affirmance of the trial court's judgment is inconsistent with our conclusion that the Council's consent to the purchase is a prerequisite to the county's right to make it. The contention, in final analysis, is but a contention that appellants should have been or should now be, granted an injunction just because there was and is no evidence to show consent by the City Council to the purchase. Quite obviously, therefore, it fails to take into account the fact that it is not the mere absence of a right to act, but one's proposal to act in spite of such lack of right, that affords grounds for an injunction. The burden of proving the impendency of an unauthorized act by the county rested on appellants, and it was not discharged. Not only is there no evidence to show that the county proposes to undertake purchase of the right of way without

the City Council's consent, but the evidence affirmatively establishes that the county officials entertain no such intention.

The remaining points in appellants' motion for rehearing are believed to have been sufficiently dealt with in the original opinion. We adhere to the views therein expressed, and the motion for rehearing is overruled.