A. J. MOORE, Appellant,

v.

CITY OF CORPUS CHRISTI et al., Appellees.

No. 1165.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 14, 1976.

Rehearing Denied Nov. 4, 1976.

Harry L. Hoag, Corpus Christi, for appellant.

J. Bruce Aycock, City Atty., Gerald L. Benadum, Asst. Dist. Atty., Corpus Christi, for appellees.

Hobby H. McCall, Paul B. Horton of McCall, Parkhurst & Horton, Dallas, W. James Murdaugh, Jr., Asst. Atty. Gen., Austin, amicus curiae.

## OPINION

BISSETT, Justice.

This is a bond election contest case. A. J. Moore, a resident of Corpus Christi, Texas, hereinafter called "contestant", brought suit against the City of Corpus Christi, its City Secretary, and the Attorney General of the State of Texas, to contest a bond election called for and held by the City on June 26, 1976. The results of the election were canvassed on June 30, 1976. The electorate, by a small majority of the votes cast, authorized the issuance of the bonds ($14,400,-000.00). The contest was filed on July 30, 1976. The suit against the Attorney General was dismissed on jurisdictional grounds. Following a trial before the court without a jury, judgment was rendered on August 12, 1976, which held that the election was valid. The contestant has duly and timely perfected an appeal from that judgment to this Court.

At said election, the following proposition, insofar as this appeal is concerned, was submitted:

"Shall the City Council of said City be authorized to issue the bonds of said City . . . to be sold at such prices and bear interest at such rates as shall be determined within the discretion of the City Council, for the purpose of making permanent public improvements, to-wit: A COMMUNITY–CONVENTION FACILITY INCLUDING AN EXHIBIT HALL, MEETING ROOMS, BANQUET HALL, ADDITIONAL AUDITORIUM IMPROVEMENTS, AND FURTHER

ACQUISITION AND DEVELOPMENT OF THE SITE, AT THE BAYFRONT CENTER FOR THE ARTS AND SCIENCES . . ."

The contestant, in his first point, contends that the trial court erred in upholding the validity of the election because the proposition submitted to the voters presented two separate and distinct propositions to be voted upon: 1) a community-convention facility and 2) additional auditorium improvements.

Any person intending to contest an election must comply with the provisions of Tex. Election Code Ann. art. 9.03 (1967). The statute requires that the contestant:

". . . shall, within thirty (30) days after the return day of election, give him a notice thereof in writing and deliver to him, his agent or attorney, a written statement of the ground on which such contestant relies to sustain such contest. By the 'return day' is meant the day on which the votes cast in said election are counted and the official result thereof declared."

■ The two-fold notice required by the statute, being jurisdictional, is mandatory, cannot be waived, and must be served on the contestee within thirty days after the official result of the election is declared. *Moore v. Edna Hospital District*, 449 S.W.2d 508 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.); *Walker v. Thetford*, 418 S.W.2d 276 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.); *Landrum v. Centennial Rural High School Dist. No. 2*, 134 S.W.2d 353 (Tex.Civ.App.—Austin 1939, writ dism'd jdgmt. cor.).

■ In the case at bar, the time within which to comply with the requirements of Article 9.03 of the Election Code with respect to notice expired on July 30, 1976 at midnight. The contestant claims that the writings, dated July 5, 1976 and July 28, 1976, signed by him and by his attorney, and hand-delivered to the contestees, met the requirements of the statute. We do not agree. There is no proof in the record that either of the writings were personally served on any of the contestees on or prior to July 30, 1976. The statement in each of the writings to the effect that the respective writing was "hand-delivered" to each of the contestees is not proof that they were delivered on the date thereof, or on any other date, and certainly not on or before July 30, 1976 at midnight. We cannot presume that the writings were delivered to the contestee within the time limited by Article 9.03 of the Election Code. Moreover, the writings do not set out as grounds for the election contest any of the grounds asserted by the contestant in the points of error brought forward in this appeal. The only grounds set out in the writings are asserted irregularities in the conduct of the election. They are not before us in this appeal.

■ Contestant's original petition was filed on July 30, 1976 at 9:30 a. m., and was served on the contestees at 4:30 p. m. that same day. The only grounds of contest alleged therein were: 1) the election was invalid because the election notice did not prescribe the rate of interest in accordance with the requirements of Tex.Rev.Civ.Stat. Ann. art. 703 (1964); and 2) the election was void because of certain violations of the Texas Election Code in the manner in which the election was conducted. The service of the petition on the contestees was made on the thirtieth day following the return date of the contested election. Since it was served after the contest was filed and within the statutorily prescribed time, it met the requirements of Article 9.03 both as to notice of intention to contest the election and as to notice of the grounds to be relied on by the contestant in the contest. Thus, the district court acquired jurisdiction of the election contest insofar as the grounds set out in the *original petition* are concerned, and no more. See *McCasland v. Steele*, 496 S.W.2d 937 (Tex.Civ.App.—Waco 1973, no writ).

■ The contestant, by an amended petition that was filed on August 5, 1976, alleged that the election was void upon the *additional* ground that the proposition included two separate and distinct propositions, which prevented the electorate from voting separately on each proposition. The

contestees were not served with written notice of that ground of attack upon the election until August 5, 1976. Since written notice of the *additional* ground of contest was not given to the contestees within thirty days after the official result of the election was declared, there was no compliance with Article 9.03 of the Election Code as to that ground. In that state of the record, the district court did not acquire jurisdiction of the election contest with respect to the ground of invalidity set out in the amended petition.

The first point of error, under the record here presented, cannot be considered in this appeal. The point is overruled.

The contestant, in his second point of error (his remaining point), contends that the trial court erred in holding that the election was valid because the proposition to be submitted to the electorate and the ballot did not specify an exact rate of interest which the bonds would bear. He claims that it was mandatory under the express provisions of Tex.Rev.Civ.Stat.Ann. art. 703 (1964) that the proposition and the ballot specify an exact rate of interest, the omission of which rendered the election void. We do not agree.

The statute, Article 703, which was last amended in 1921, provides, in part:

"The proposition to be submitted shall distinctly specify:

     *     *     *     *     *     *

3. The rate of interest."

■ There is no statutory requirement that the ballot in a municipal bond election shall specify "the rate of interest". All that is required is that the ballot substantially submit the proposition to be voted on with such definiteness and certainty that the voters will not be misled. *England v. McCoy*, 269 S.W.2d 813 (Tex.Civ.App.—Texarkana 1954, writ dism'd); *Turner v. Lewie*, 201 S.W.2d 86 (Tex.Civ.App.—Ft. Worth 1947, writ dism'd). The character, features and purposes of the proposed bond election are to be set out in sufficient detail in the proposition, so that the voters will be familiar with the proposal when they cast their ballots. *Railroad Commission v. Sterling Oil & Refining Co.*, 147 Tex. 547, 218 S.W.2d 415 (1949). It is presumed that all persons eligible to vote in a bond election will familiarize themselves with the contents of and the statements made in the proposition before casting their ballots; otherwise the legislature would have required a verbatim copy of the proposition on the ballot. *Whiteside v. Brown*, 214 S.W.2d 844 (Tex.Civ.App.—Austin 1948, writ dism'd). In this case, the election was not invalid on the ground that the ballot did not specify an exact rate of interest which the bonds would bear, or that it did not properly inform the voters of the amount of debt being created by approval of the bond issue, as argued by the contestant in his brief.

With respect to municipal bond elections, Article 703 has been construed by the appellate courts of this State on two occasions. It was held in each instance that the aforesaid statute did not require that an exact rate of interest be specified in the proposition, but that there was a substantial compliance with the statutory requirement where the proposition specified only a maximum rate of interest. *Amstater v. Andreas*, 273 S.W.2d 95 (Tex.Civ.App.—El Paso 1954, writ ref'd n. r. e.); *Cameron v. City of Waco*, 8 S.W.2d 249, 254 (Tex.Civ.App.—Waco 1928, no writ).

■ In deciding whether a statute is mandatory or not, the legislative intent is determined from a consideration of the entire act, its nature, its object, and the consequences that follow from the construction thereof. *State v. Fox*, 133 S.W.2d 987 (Tex. Civ.App.—Austin 1939, writ ref'd); *Nichols v. Aldine Independent School District*, 356 S.W.2d 182 (Tex.Civ.App.—Houston 1962, no writ). "There is no absolute test by which it may be determined whether a statutory provision is mandatory or directory . . . although the word 'shall' is generally construed to be mandatory, it may be and frequently is held to be merely directory". *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943 (1956).

In the instant case, the proposition within the notice calling the election specifically stated that the bonds would "bear interest at such rates as shall be determined within the discretion of the City Council". That language is plain and unmistakably clear. The character, purposes, and chief features of the proposed bond election were set out in sufficient detail in the proposition to inform and acquaint the voters with all aspects of the proposal. No person who had previously read the proposition prior to the election could have been misled, deceived or confused with respect to the rate of interest that was specified therein. The voters knew that the bonds must bear some rate of interest, and that the City Council could provide for the bonds to bear interest at the highest rate allowed by law. The voters also knew that the City Council could, and presumably would, fix the lowest rate at which the bonds could be sold, considering the economic conditions existing at the time of the sale. The electorate was put on notice that the voters were being asked to authorize some interest rate not exactly known on election day, but which would be determined in the future by the City Council, *within its discretion and the limits of the law.* The voters of the City of Corpus Christi had a clear choice in the matter. They made that choice, and expressly authorized the City Council to set the exact rate of interest in the manner clearly specified in the proposition. We see nothing inherently wrong in the calling and holding of an election which plainly permits the voters to allow the exact rate of interest which the proposed bonds will bear to be set by the persons whom the people have chosen to represent them, and in their discretion and good judgment.

▆▆▆ The discretion of a City Council in the performance of public duties is subject to review by the courts. The word "discretion" means what is just and proper under the circumstances, and is not a word for arbitrary will or inconsiderate action. *Cowden v. Broderick & Calvert,* 131 Tex. 434, 114 S.W.2d 1166 (1938). The governing body of a municipality is constrained in the exercise of its discretion by legal limits, and the discretionary setting of the rate of interest on a public bond issue must be exercised according to honest judgment and within the proscription of the bond market at the time the bonds are sold. See *Barrington v. Cokinos,* 161 Tex. 136, 338 S.W.2d 133 (1960); *Scruggs v. Wheeler,* 4 S.W.2d 616 (Tex.Civ.App.—Amarillo 1927, writ ref'd).

It is a matter of common knowledge that interest rates fluctuate according to economic conditions. There has been a very substantial increase in the last few years in the rates of interest required of municipal bonds if the bonds are to be sold. Without the sale of bonds, few, if any, substantial improvements could be constructed by public agencies. The 61st Legislature, in enacting Tex.Rev.Civ.Stat.Ann. art. 717k–2 (Supp.1976), effective September 11, 1969, removed all existing limitations on the net effective interest rate on public securities to be issued and sold from and after the effective date of the Act, and recognized the fact that "many public agencies are presently unable to issue and sell public securities because of legal restrictions on the rate of interest that such public securities may bear, which makes it impossible to finance urgently needed public improvements. . . ."

The statute, Article 717k–2, provides, in part:

"Sec. 2. Any public agency is hereby authorized to issue and sell any issue or series of its public securities at any price or prices and bearing interest at any rate or rates, as shall be determined within the discretion of the governing body of the public agency, subject to the exceptions hereinafter provided. . . . "

"Sec. 3. The provisions of this Act concerning sale price and the maximum rates of interest which public securities may bear shall apply to all public securities notwithstanding the provisions or restrictions of any general or special law or charter to the contrary, but shall not apply to any public securities whose maximum rate of interest or maximum net

effective interest rate is, at the time of issuance thereof, otherwise specifically fixed by the Constitution."

The exceptions mentioned in the statute do not apply to the case at bar.

■ There is no suggestion in this case that there was any fraud in the choice of the words used in the proposition. It is apparent that the language contained therein followed the mandate of Article 717k–2 concerning the fixing of the exact rate of interest after the bonds had been voted. There is no evidence of any attempt to mislead the voters, or that they were misled. The Courts justly consider the obtaining of a fair election and the voters' free choice and are anxious to sustain the will of the people as expressed by the result of the election, regardless of the size of the majority vote.

The Legislature, at the time of the passage of Article 717k–2 was cognizant of paragraph 3 of Article 703, and it is obvious that it considered that Article 703 did not require the proposition to state an exact rate of interest. Any other construction would, in many instances, prevent a solution of the problem that Article 717k–2 was designed to solve.

■ We hold that Tex.Rev.Civ.Stat. Ann. art. 703 (1964) does not make it mandatory that the proposition specify an exact rate of interest which the bonds will bear. The statement regarding the rate of interest in the proposition that was submitted to the voters of Corpus Christi was in substantial compliance with the statute. We refuse to give the statute the technical construction asserted by the contestant, which, if done, would render the bond issue, otherwise valid, invalid. The second point of error is overruled.

The judgment of the trial court is AFFIRMED.

NYE, Chief Justice (dissenting).

I respectfully dissent. When the City of Corpus Christi was attempting to sell to its citizens improvements to be made to the Bayfront Center, it was required by law to submit the proposition to its qualified voters. The law says that the City "shall distinctly specify" five (5) separate things in calling for the proposition to be voted on. These five (5) requirements are:

"1. The purpose for which the bonds are to be issued;

2. The amount thereof;

3. The rate of interest;

4. The levy of taxes sufficient to pay the annual interest and provide a sinking fund to pay the bonds at maturity;

5. The maturity date, or that the bonds may be issued to mature serially within any given number of years not to exceed forty." Art. 703, V.A.C.S.

Four (4) of these five (5) requirements were met. They were distinctly specified as herein set out below. Number 3, the requirement as to "interest", was not.

1. The law says "distinctly specify the purpose": The City's call for the election stated, ". . . making permanent public improvements to-wit: A COMMUNITY–CONVENTION FACILITY, INCLUDING AN EXHIBIT HALL, MEETING ROOMS, BANQUET HALL, ADDITIONAL AUDITORIUM IMPROVEMENTS, AND FURTHER ACQUISITION AND DEVELOPMENT OF THE SITE, AT THE BAYFRONT CENTER FOR THE ARTS AND SCIENCES: . . ."

2. The law says "distinctly specify the amount thereof": The City's call for the election stated, ". . . in the aggregate principal amount of $14,400,000."

3. The law says "distinctly specify the rate of interest": the City's call for the election stated: ". . . *interest at such rates as shall be determined within the discretion of the City Council.*" (Emphasis supplied.)

4. The law says "distinctly specify the levy": the City's call for the election stated: ". . . to levy and cause to be assessed and collected annual ad valorem taxes in an amount sufficient to pay the annual interest on said bonds and provide a sinking fund to pay said bonds at maturity."

5. The law says "distinctly specify the maturity date": the City's call for the election stated: ". . . to mature serially within not to exceed twenty-five years from their date."

In these "truth in lending" days in which we live, the law requires of everyone that the rate of interest to be charged a person must be spelled out in exact terms and in advance. This is so the person who is expected to pay the interest ultimately will know the total amount of his obligation. This law makes a vast improvement within our society. It prevents hidden charges and deceptive practices. See Art. 5069.14–01, et seq. (Supp.1976).

The bond election results were very close. There is no way that any court could determine the reason some people voted "for" or "against" the proposition. If the rate of interest had been distinctly set out as the law requires, the election result undoubtedly would have been different. It might have been more in favor of the proposed expenditure, or on the other hand, the bond election may have failed. We have no way of knowing or inquiring into the mental process of the voters.

In a case where the grant of authority is to levy and collect a certain rate of taxes on the taxpayer's property, for a given purpose, the voters not only grant such authority to levy and collect such taxes (not to exceed a stated rate), but also give a mandate to levy and collect that rate of taxes. The voters are the sole beneficiaries of the levy, and they authorize the same because they are of the opinion that such action will subserve their best interests. They are interested in fixing the maximum rate, for in voting for the proposition to issue the bonds they give their consent to be taxed at a rate not to exceed that authorized by their vote. See *Cameron v. City of Waco*, 8 S.W.2d 249 (Tex.Civ.App.—Waco 1928, no writ).

It is undisputed that the City did not "distinctly specify" the rate of interest in either of its two descriptions of the proposition given to the voters. This, I believe was a serious omission on the part of the City.

Article 703's requirement that the rate of interest be distinctly specified is to inform the public the maximum amount they will be charged on the bond obligation.

The rate of interest on $14,400,000.00 over a twenty-five year period is very important. If an outside limit was not set at the time the proposition was voted on, delay in the issuance of such bonds could conceivably require a much higher interest rate resulting in a much higher tax rate than that anticipated at the time the voting public gave authority to issue bonds. By setting the maximum rate and by receiving authority for such amount, a governing body would of necessity have to go forward almost immediately with the sale of the bonds at the best possible rate (not to exceed the rate authorized by the voters) rather than by waiting and taking a chance that the bond market would make the bonds unmarketable and a new election inevitable. On the other hand, if a City could dispose of the bonds at a lesser rate of interest than that authorized by the voters, then the benefit would enure to the taxpayers of the City who granted permission for their issuance in the first place. No harm would result. This is the holding of the two cases cited by the majority as the sole authority to permit a governing body to set any rate that they may see fit in their discretion. See also *Amstater v. Andreas*, 273 S.W.2d 95 (Tex.Civ.App.—El Paso 1954, writ ref'd n. r. e.); *Cameron v. City of Waco*, 8 S.W.2d 249 (Tex.Civ.App.—Waco 1928, no writ).

The majority states that the notice calling for the election is "plain and unmistakably clear". This is true, but it violates the specific statute which authorizes the calling for the election. The majority states further that the voters knew that the bonds must bear some rate of interest and that the City Council could provide for the bonds to bear interest at the highest rate allowed by law, and this, in effect, would be setting the maximum rate. If the highest rate that a bond could be sold for is 10%, (Article 16, Section 11, Texas Constitution), then I

doubt seriously if the present bond election would have carried had the proposition stated ". . . at any rate of interest to be set by the City Council not to exceed 10%". This is the implication that goes with such majority holding.

The majority also states that the word "shall" in Article 703 is permissive because the legislature in enacting Article 717k–2, V.A.C.S. removed all existing limitations on the net effective rate of interest on bonds to be issued and sold by the governing agency. This is not true. The legislature does not and did not repeal this statute by implication. The word "shall" is ordinarily imperative and operates to impose a duty which may be enforced as in this case. The word must be given that effect which is necessary to carry out the intention of the legislature as determined by ordinary rules of construction. The deliberate refusal of the legislature to insert the word "may" (in setting out the requirement as to the rate of interest) in place of the word "shall", shows an intent on the part of the legislature to use the latter word as mandatory. Surely, had the legislature intended that this word "shall" be permissive or that this article was to be repealed, it would have so stated. Where a statute clearly indicates that the word "shall" was intended to be mandatory and it would be clearly inconsistent with the overall legislative intent for it to be otherwise—it is mandatory! 82 C.J.S. Statutes § 380, pp. 877–882.

It is true as the majority has so stated that all that is required to be put on the ballot itself, as opposed to the notice calling the election, is just enough to make sure that the voters will not be misled. It would have been sufficient, for instance, for the City to have to put on the ballot "Proposition: Bonds for convention facility"—"For" —or "Against".

However, in this case, the proposition that was actually placed on the ballot informed the voters of the total amount of the bonds, and the purposes of its expenditure in detail, but then made no reference whatsoever to the rate of interest. Al-

though the publicly published notice to the voters generally is a sufficient compliance with the law, it is possible that the voters were misled in this election by the inclusion of the purpose in detail and the specific amount of the bonds, and then by leaving out the discretionary rate of interest to be set by the City Council after the election was over.

It is my opinion that the City of Corpus Christi acted improvidently. The City was under a statutory duty to set out a maximum rate of interest in the call of the election (the public notice) and also should have included on the ballot itself a short description of the maximum interest rate. The latter is especially important where the City attempted to go into exacting detail on the ballot as to the amount of the bonds and the purpose of the bonds. It follows that the City should also have given in detail the maximum rate of interest to be charged.

The majority by its decision would allow any city, any school district or any other governmental agency to call for a bond election and completely disregard the legislative mandate that the rate of interest "shall" be distinctly specified. The majority relies on two old cases, each of them only holding that if the call of the election sets out a *specified maximum amount of interest to be charged* (4% in one case and 5% in the other) such specified interest is a sufficient compliance with the law. Art. 703 (V.A.C.S.). The majority goes further than the two cases which it cites. The majority goes further than any other court in this State by holding that any governmental agency may completely disregard the mandatory effect of the statute so long as they inferentially state that they will not charge more than the maximum legal rate of interest. The voters would "know" this maximum rate of interest, not because the agency specifically informed them as required by Art. 703, but because of the legal presumption that all citizens are charged with knowledge of the law. If the legislature had wished to give the City of Corpus

Christi absolute discretion in setting the rate of interest on bonds to be submitted to the voters, it would have so stated. The legislature did this in authorizing the City to sell bonds under Art. 717k–2, V.A.C.S. But the legislature did not authorize the City to do this under Article 703, V.A.C.S. because I believe the legislature intended for the voters to "know" in advance the outside limit of the bond obligation.

It is just as important for the City to be required to set out a specified rate of interest on bonds to be approved by the voters as it is to set out the specified total amount of bonds that are to be voted on. Both requirements set in concrete the total maximum obligation. How can you require one requirement to be specific and not the other while they are all covered in the same statute?

The incongruity of the majority holding is quite evident by its reasoning. It overrules appellant's first point of error saying that the statute which says that the contestant "shall" give notice within 30 days, etc., is a mandatory requirement. Since the appellant did not follow the statute in the first instance, its contest on this point cannot be considered. Using a different standard for the City, the majority says that "shall" in the other statute is not mandatory—the City "may" comply or not comply as it wishes.

Although it is unfortunate that courts are required to set aside an election from time to time, it is far more important that the cities be required to follow the statutory law in matters of such importance.