

# The Attorney General of Texas

July 29, 1981

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5236

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mike Driscoll
Harris County Attorney
Harris County Courthouse
1001 Preston, Suite 634
Houston, Texas 77002

Opinion No. MW-357

Re: Lease agreement be-
tween Harris County and
South Texas College of
Law

Dear Judge Driscoll:

Article 1817, V.T.C.S., provides that the Courts of Civil Appeals (to be redesignated "Courts of Appeals" on September 1, 1981) in the First and Fourteenth Supreme Judicial Districts shall be located in Houston. The statute further provides that:

> [T]he County of Harris shall furnish and equip suitable rooms in Houston for [said courts], and for the justices thereof, all without cost or expense to the state....

V.T.C.S. art. 1817.

The Harris County Commissioners Court and the South Texas College of Law are considering a lease agreement that would facilitate the county's efforts to fulfill this mandate. You ask:

1. Can Harris County enter into an agreement with South Texas College of Law whereby South Texas College of Law agrees to construct a multistory building with completion of only the shell of the 5th and 6th stories, with Harris County completing the construction of the said 5th and 6th stories and leasing said stories for use by the Courts of Civil Appeals for the 1st and 14th Supreme Judicial Districts?

2. Can Harris County expend the proceeds of the sale of the Harris County Office and Courts Building Bonds-1979, Series A, to construct said 5th and 6th stories with the exception of the shell which will be constructed by the South Texas College of Law?

3. Will the said building be subject to ad valorem taxes so long as South Texas College of Law uses the remainder of the building for its school purposes?

You have not submitted any particular agreement to us. We therefore consider only the question of whether the commissioners court is authorized to enter into the kind of lease agreement you describe. We imply nothing regarding the validity or desirability of any agreement, or any element thereof, that may eventually be concluded.

Commissioners courts may only exercise those express and implied powers conferred by the constitution and statutes. Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948); Anderson v. Wood, 152 S.W.2d 1084 (Tex. 1941). We must therefore determine whether a constitutional or statutory basis for this kind of lease agreement exists.

A threshold question, however, is whether, the commissioners court is prohibited from entering into such an agreement because the article 1817 requirement that Harris County furnish "suitable rooms" for the courts of appeals at no cost to the state is unconstitutional. You suggest that this requirement violates article VIII, section 1 of the Texas Constitution, which requires that taxes be equal and uniform, as well as article III, section 56, which prohibits local or special laws.

Article 1817 does not purport to levy a tax. Nevertheless, you contend that by requiring courts of appeals to be in certain taxing units at their expense, the statute causes a higher rate of assessment in those units and therefore its effect is to create unequal taxation. However, while the statute may increase the tax burden on certain taxing units, it does not create unequal taxation within any unit. It therefore does not violate article VIII, section 1. See Norris v. City of Waco, 57 T. 635 (1882).

Article III, section 56 provides that:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

. . . .

Regulating the affairs of counties. . .

In Attorney General Opinion H-196 (1974), this office held a law establishing the office of jail administrator in Bexar County to be unconstitutional. However, the opinion also mentioned an exception to article III, section 56 which was discussed in Smith v. Davis, 426 S.W.2d 827 (Tex. 1968), viz., that legislation of interest to the people at large is not "local" legislation. This exception was deemed inapplicable in H-196, but we believe it applies here. Legislation providing for the maintenance of courts of appeals is certainly of general interest to the people of Texas.

Courts have also held that legislation enacted pursuant to article V, section 1 of the constitution, which authorizes the legislature to establish a courts system, is not proscribed by article III, section 56, but is expressly permitted by the first sentence thereof: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law. . ." (Emphasis added.) See Harris County v. Crooker, 248 S.W. 652 (Tex. 1923); Jones v. Anderson, 189 S.W.2d 65 (Tex. Civ. App. - San Antonio 1945, writ ref'd). While the constitutional basis for article 1817 is article V, section 6, we believe our courts would also regard it as authorized by article III, section 56. Like article V, section 1 legislation, laws enacted under article V, section 6, are passed pursuant to the legislature's authority to establish a courts system. We therefore conclude that article 1817, V.T.C.S., does not violate article III, section 56 of the Texas Constitution.

We now turn to the question of whether the commissioners court has express or implied authority to enter into the kind of lease agreement you describe. Article 2370b, V.T.C.S., provides that:

> Section 1. Whenever the Commissioners Court of any county determines that the county courthouse is not adequate in size or facilities to properly house all county and district offices and all county and district courts and all justice of the peace courts...and to adequately store all county records and equipment...and/or that the county jail is not adequate...the Commissioners Court may purchase, construct, reconstruct, remodel, improve and equip, or otherwise acquire an office building or buildings, or courts building or buildings, or jail building or buildings...or an additional building or buildings in which any one or more of the county or district offices or county, district or justice of the peace courts, or the county jail or any other county facilities or functions may be housed, conducted and maintained; and may purchase and improve the necessary site or sites therefor...

> Sec. 2 Such building or buildings...may also be used for the purpose of carrying on such other public business as may be authorized by the Commissioners Court, and/or the Commissioners Court may also lease or rent any part or parts of any such building or buildings (which may not be presently needed for any of the above purposes) to the State of Texas and any of its political subdivisions, and the Federal Government.
>
> Sec. 3. To pay for the purchase, construction, reconstruction, remodeling, improvement and equipment of any such building or buildings...the Commissioners Court is authorized to issue negotiable bonds...(Emphasis added.)

Whether article 2370b authorizes such an agreement depends upon whether, in the context thereof, (1) the right to "purchase" includes the right to "lease" or purchase a leasehold interest; (2) two stories of a proposed multistory structure constitute a "building"; and (3) providing housing for the courts of appeals in Houston constitutes a "county function" of Harris County.

With respect to the third issue, that in light of article 1817, providing housing for the courts of appeals in Houston is clearly a "county function" of Harris County. In any event, section 2 of article 2370b authorizes a commissioners court to use buildings to carry on "such other public business" as it may authorize.

The second issue is more complicated. Cases involving the term "building" indicate that its definition varies with the statute or legal instrument being construed. Compare Day v. State, 534 S.W.2d 681 (Tex. Crim. App. 1976) (structure with no doors or locks not a "building" for burglary statute); Aluminum Company of America v. Kohutek, 455 S.W.2d 789 (Tex. Civ. App. - Corpus Christi 1970, no writ) (trailer a "building" within restrictive covenant); Ambrose & Co. v. Hutchison, 356 S.W.2d 215 (Tex. Civ. App. - Ft. Worth 1962, no writ) (pier a "building" for purposes of mechanics liens); Peterson v. Stolz, 269 S.W. 113 (Tex. Civ. App. - Beaumont 1925, writ ref'd) ("building" a "structure having capacity to contain and which is designed for the habitation of man...."). See also Roberts v. Commercial Casualty Ins. Co., 168 F.2d 23 (6th Cir. 1948) (suite in hotel room a "building" for purposes of life policy clause). Ultimately, as the court stated in Mutual Lumber Co. v. Sheppard, 173 S.W.2d 494 at 497 (Tex. Civ. App. - Austin 1943, no writ): [T]he meaning of the noun building depends...upon the particular facts and circumstances of each case, controlled largely by the intention of the parties, or by the aim or purpose of a particular statute. (Emphasis added.) Thus, we must determine how flexibly the legislature intended "building" to be construed in the context of article 2370b.

When one considers article 2370b in its entirety, keeping in mind that the purpose of statutory construction is to ascertain legislative intent and that courts will not place undue emphasis upon isolated words or construe statutes so as to lead to an impractical result, see Citizens Bank of Bryan v. First State Bank of Hearne, 580 S.W.2d 344 (Tex. 1979); McKinney v. Blankenship, 282 S.W.2d 691 (Tex. 1955), the conclusion is inescapable that "building" was intended to be a flexible term which would include two stories in a multistory structure.

To say that "building" only embraces entire structures is to conclude that the legislature consciously selected that particular word with the intent of restricting counties in their ability to acquire needed facilities. However, you have suggested no reason why it would have done so, and we can perceive none. The legislature enacted article 2370b to enable counties to obtain necessary space to alleviate overcrowding, and there is no indication that it mattered whether they do so by obtaining an entire structure or part of one.

An inflexible construction of "building" would also mean that if a county needed space and two facilities were available--a twenty-story structure and two stories of a four-story structure--article 2370b would preclude it from obtaining the latter even though it suited the county's needs perfectly. The legislature certainly could not have intended such an impractical and wasteful result, at least where it had no perceptible goal in mind. Furthermore, to say that two stories are not a "building" is to raise the question of what does constitute a building. Some fine line-drawing would be required to determine whether certain structures, i.e., self-contained units under a common roof, as in a shopping mall, or enclosed wings of a large structure, constitute "buildings."

Finally, when used in connection with certain verbs in article 2370b, "building" makes sense only when construed as including parts of a structure. For example, counties may "remodel," "improve," and "equip" buildings. It can hardly be argued that the legislature intended that counties must do these things to the entire of building if it is to do them at all.

In short, we believe the legislature intended "building" to be construed flexibly, along the lines discussed in Peterson v. Stolz and Roberts v. Commercial Casualty Ins. Co., supra. We therefore conclude that two stories of a proposed multistory structure constitute a "building" within article 2370b.

We next consider whether the authority to "purchase" conferred in article 2370b includes the authority to "lease." Prior opinions of this office reach conflicting conclusions as to the meaning of the term "purchase." Attorney General Opinion M-1158 (1972), for example, concluded that "purchase," within section 55.11 of the Texas Education Code, included "all lawful acquisitions of real estate by any means

Mike Driscoll - Page 6

whatever, except by descent." <u>See also</u> Attorney General Opinion H-23 (1973). On the other hand, Attorney General Opinion M-950 (1971) concluded that "purchase" does not include a "lease" within section 21.901 of the Education Code.

Section 1 of article 2370b authorizes commissioners courts to "purchase...or otherwise acquire" buildings. In Attorney General Opinion MW-290 (1981), we held that "or otherwise acquire" included authority to lease. Section 3, however, only authorizes commissioners courts to issue negotiable bonds to "purchase" buildings; it omits any reference to "or otherwise acquire." Since a commissioners court is authorized to lease a building, however, it can hardly be argued that the legislature intended to preclude it from issuing bonds to pay for such lease. Thus, the legislature must have intended for "purchase" to have the meaning ascribed to the term in Opinions M-1158 and H-23, <u>supra</u>, viz., all lawful acquisitions of real estate by any means whatever, except by descent. The term certainly includes the purchase of a leasehold estate.

This construction reconciles the provisions of section 1 and 3, and it accounts for the omission of "or otherwise acquire" in section 3. When the legislature authorized commissioners courts to issue bonds to "purchase" buildings, it thereby authorized bonds to be issued for <u>all</u> forms of acquisition of buildings for which payment would be required, including leases. The reference to "or otherwise acquire" in section 1, therefore, is to acquisitions by means of gift or descent. The phrase was omitted in section 3 because no payment is required for property acquired by descent--thus no bonds are needed-- and therefore there was no reason for including it in that section.

For the foregoing reasons, we conclude that article 2370b authorizes the commissioners court to enter into the type of lease agreement you describe. In view of our conclusion, we need not decide whether another other statute also provides such authority.

You next ask whether the commissioners court may use the Office and Courts Building Bonds-1979, Series A, to construct the stories in question. Article 2370b authorizes the commissioners court to issue negotiable bonds for this purpose. Thus, we need only consider whether these particular bonds may be used for the purpose sought.

The bond proposition submitted to the voters in Harris County in 1979 provided as follows:

Shall the Comissioners Court of Harris County, Texas be authorized to issue the bonds of said county in the amount of...for the purpose of paying for the <u>purchase</u>, <u>construction</u>, reconstruction, remodeling, improvement and equipment of an office building or buildings, or courts building or buildings (in addition to the existing courthouse), <u>or any additional building</u>

> or buildings in which any one or more of the
> county or district offices or county, district or
> justice of the peace courts, or any other county
> facilities or functions may be housed, conducted
> and maintained...(emphasis added).

Bond proceeds may be expended only for the purposes for which the bonds were voted. Lewis v. City of Fort Worth, 89 S.W.2d 975 (Tex. 1936); Black v. Strength, 246 S.W. 79 (Tex. 1922); Gordon v. Commissioners' Court of Jefferson County, 310 S.W.2d 761 (Tex. Civ. App. - Beaumont 1958, writ ref'd n.r.e.). Moreover, the purposes of a proposed bond election must be set out in enough detail that voters will be familiar with the proposal when they cast their ballots. See V.T.C.S. art. 703; Tax Payers Association of Lubbock v. City of Lubbock, 565 S.W.2d 578 (Tex. Civ. App. - Amarillo 1978, no writ); Moore v. City of Corpus Christi, 542 S.W.2d 720 (Tex. Civ. App. - Corpus Christi 1976, writ ref'd n.r.e.); 15 Tex. Jur. 2d Counties §§124 et seq. Inasmuch as the bond proposition tracked section 3 of article 2370b, the only question is whether its terms were too general to sufficiently apprise Harris County voters of the purposes for which the bonds might be used.

In Moore v. City of Corpus Christi, supra, at 723, the court stated that:

> The character, features and purposes of the
> proposed bond election are to be set out in
> sufficient detail in the proposition, so that the
> voters will be familiar with the proposal when
> they cast their ballots. [citations omitted]. It
> is presumed that all persons eligible to vote in a
> bond election will familiarize themselves with the
> contents of and the statements made in the
> proposition before casting their ballots....

In light of the foregoing authorities, we do not believe the bond proposition could be successfully challenged on the ground that its terms were too general and therefore misleading. As noted, the proposition tracked section 3 of article 2370b. It authorized the commissioners court to purchase "any" building to house "any county function." Voters with doubts about the meaning of the provisions could have inquired as to their meaning before the election. We therefore conclude that the bonds may be used for their intended purpose, assuming, that any other applicable requirements are met. See Attorney General Opinions MW-290 (1981); H-403, H-445 (1974).

Your final question is whether the proposed multistory building will be subject to ad valorem taxes. Article VIII, section 2 of the Texas Constitution authorizes the legislature to exempt from taxation "buildings used exclusively and owned by persons or associations of persons for school purposes." Section 11.21 of the Property Tax Code provides that:

(a) A person is entitled to an exemption from taxation of the buildings and tangible personal property that he owns and that are used for a school that is qualified as provided by Subsection (d) of this section if:

   (1) the school is operated exclusively by the person owning the property;

   (2) except as permitted by Subsection (b) of this section, the buildings and tangible personal property are used exclusively for educational functions; and

   (3) the buildings and tangible personal property are reasonably necessary for the operation of the school.

(b) Use of exempt tangible property for functions other than educational functions does not result in loss of an exemption authorized by this section if those other functions are incidental to use of the property for educational functions and benefit the students or faculty of the school.

. . . .

Claims for tax exemptions are strictly construed. Davies v. Meyer, 541 S.W.2d 827 (Tex. 1976). Moreover, the right to enjoy an exemption can only be established by strict proof of all facts necessary to create the exemption. Radio Bible Hour, Inc. v. Hurst-Euless Ind. School District, 341 S.W.2d 467 (Tex. Civ. App. - Ft. Worth 1960, writ ref'd n.r.e.). The determination as to whether or not the building in question would be subject to ad valorem taxes is a fact question which cannot be answered by an attorney general's opinion.

## S U M M A R Y

Harris County and the South Texas College of Law may enter into an agreement calling for the latter to construct a multistory building but complete only the shell of the fifth and sixth stories, and the former to complete construction of those stories and lease them for use by the Courts of Civil Appeals for the First and Fourteenth Supreme Judicial Districts. Harris County may expend the proceeds of the sale of the Harris County Office and Courts Building

Bonds-1979, Series A, to construct said stories. We express no opinion regarding whether or not the proposed building will be subject to ad valorem tax.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by   Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Richard E. Gray III
Jim Moellinger