**TEXAS MEDICAL LIABILITY TRUST, Relator,**

v.

**The Honorable Robert GARZA, Judge of the District Court of Cameron County, 138th Judicial District, Respondent.**

No. 13–95–516–CV.

Court of Appeals of Texas, Corpus Christi.

March 14, 1996.

Sheila Ellwood Skaggs, Asst. Attorney General, Tort Litigation Division, Austin, TX, interested party.

Michael G. Mullen, Brown McCarroll & Oaks Hartline, Austin, TX, Jessie Alliene Amos, Brown, McCarroll & Oaks Hartline, Austin, TX, for relator.

Before YAÑEZ, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

YAÑEZ, Justice.

In this original mandamus proceeding, relator, Texas Medical Liability Trust (TMLT), seeks to set aside Judge Robert Garza's order sustaining the State's objection to indemnification pursuant to a medical malpractice settlement between Dr. John Tucker and claimant, Ricardo Barron. We conditionally grant the writ of mandamus.

On July 7, 1982, Barron received treatment for a knife wound in his back at the emergency room of Dolly Vinsant Memorial Hospital. Barron complained of numbness in his leg and back. Dr. Rogans, the emergency room physician, stitched the puncture wound located around the T–12 vertebral disc area, but did not take any x-rays or perform a physical examination. Later that morning, Barron saw his family physician, Dr. Tucker, for a follow-up. Barron continued to complain about pain in his left thigh and leg. Dr. Tucker did not order x-rays of Barron's back or document an examination of any stab wounds either. Barron went back to the hospital on July 12, 1982, complaining of weakness and pain to his left leg. Dr. Minto removed the stitches but did not physically examine Barron or order x-rays. Barron's hospital chart documents a stab wound in the lower lumbar back. On July 13, Barron went to see Dr. Tucker at San Benito Medical Associates, Inc. for additional care of his back and leg because of continued pain and numbness. Barron saw Dr. Simmons, instead, who told him that he was suffering from a muscle spasm and was sent home.

In May 1992, Barron sought treatment from Dr. Tucker for injuries sustained in an automobile accident. Because Barron continued to experience persistent back and leg pain, he sought treatment from a chiropractor. The chiropractor x-rayed Barron and informed him on March 17, 1993 that he had a three and a half inch knife blade in his back, located at about the T–12 vertebral area. Barron delivered the x-rays to Dr. Tucker who forwarded them to a radiologist

for an analysis. The portion of the x-ray which showed the knife blade was circled. The radiologist interpreted the circled object as being a surgical pin inserted to stabilize fusion of Barron's back. However, Barron had never had back surgery. Barron maintained that he experienced pain in his back and left leg from 1982 to 1992.

In 1994, Barron filed suit against Dr. Tucker and others asserting that they were negligent in their treatment of his injury and that they fraudulently concealed the presence of the knife blade in his back. Barron sought recovery for injuries resulting from the knife blade remaining in his back for approximately ten years. The parties eventually settled their claims, and pursuant to the release and settlement agreement, the trial court dismissed the suit.

Subsequently, TMLT, Dr. Tucker's insurance carrier, notified the Attorney General of the settlement and requested indemnification from the State of Texas. Chapter 110 of the Texas Civil Practice and Remedies Code requires the State to provide indemnification for malpractice to doctors devoting at least ten percent of their practice to charity care, and to indemnify them for actual damages they become obligated to pay pursuant to an agreed settlement. *See* Tex.Civ. Prac. & Rem.Code Ann. §§ 110.002–.003 (Vernon Supp.1996). The damages must be based on an eligible health care liability claim against the health care professional in the course and scope of providing health care. *Id.* § 110.003(a). An "eligible health care liability claim" is defined in the Medical Liability and Insurance Improvement Act (the Medical Liability Act). *Id.* § 110.001(2). The Medical Liability Act defines such a claim as a cause of action against a health care physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care which proximately results in injury to or death of the patient. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(4) (Vernon Supp.1996).

The State objected to indemnification and asserted that 1) TMLT is not entitled to seek indemnification, 2) the amount of the settlement for which Dr. Tucker is liable is un-

clear, 3) the accrual date of Barron's cause of action precedes the effective date of the indemnification statute, and 4) TMLT seeks indemnification for ineligible property damage claims. The trial court held a hearing on the State's objection and, thereafter, entered an order sustaining the objection to indemnification without specifying the basis for its ruling. TMLT now brings this mandamus action seeking to set aside the trial court's order and requesting that this Court direct the trial court to approve the settlement and direct the State to indemnify TMLT.

■ A trial court's order disposing of the indemnification issue is reviewable by mandamus action. *See* Tex.Civ.Prac. & Rem. Code Ann. § 110.006(b) (Vernon Supp.1996). We review such an order only for an abuse of discretion by the trial court. *Id.; State v. Pruett,* 900 S.W.2d 335, 336 (Tex.1995). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Because the trial court did not state the basis for its ruling, the order will be upheld on any applicable theory supported by the record. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *National Bugmobiles, Inc. v. Jobi Properties,* 773 S.W.2d 616, 620 (Tex.App.—Corpus Christi 1989, writ denied).

■ We first examine the State's contention that the indemnification statute is inapplicable because Barron's cause of action accrued before the statute's effective date of January 1, 1990. The State argues that the cause of action accrued on the date the breach of duty occurred which was July 1982, the date Barron sought treatment for his stab wound. The State, therefore, concludes that it cannot be held liable for indemnification. TMLT counters that the cause of action did not accrue until March 1993 when Barron discovered the blade.

■ Chapter 110 was enacted in 1989 and applies only to causes of action which accrue on or after January 1, 1990. Omnibus

Health Care Rescue Act, 71st Leg., R.S., ch. 1027, § 31, 1989 Tex.Gen.Laws 4128, 4149. When the term "accrue" is undefined, the court determines when the cause of action accrued and when the statute of limitations starts to run. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). A cause of action generally accrues when a wrongful act effects an injury regardless of when the plaintiff learns of that injury. *Id.* The discovery rule exception applies, however, where the plaintiff possesses an inherently undiscoverable cause of action, which accrues, not from the date of the wrongful act or omission, but from the date the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of the injury. *Id.; Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977).

However, Chapter 110 concerns indemnification of eligible health care liability claims and is therefore governed by the Medical Liability Act which contains an absolute statute of limitations:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1996). The Texas legislature abrogated the application of the discovery rule in medical malpractice cases when it passed § 10.01. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). Thus, if § 10.01 applied to Barron's cause of action, it would have accrued in 1982 as argued by the State.

However, the open courts provision of the Texas Constitution[1] precludes any application of § 10.01 that sets an impossible precondition to common law remedies. *Moreno,* 787 S.W.2d at 355. The courts carved out and applied the open courts exception to cases in which the very nature of some medical malpractice cases may make it inherently impossible for an injured plaintiff to discover

his injury within two years of the actual act of malpractice. *Nelson v. Krusen,* 678 S.W.2d 918, 921 (Tex.1984). Section 10.01 is unconstitutional under the open courts provision to the extent it purports to abridge a person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit within the two-year statute of limitations. *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985); *Krusen,* 678 S.W.2d at 923.

In his sixth amended petition, Barron alleged facts necessary to challenge the constitutionality of § 10.01. Because the facts are not in dispute, we accept the recitation of facts in relator's brief as correct. Tex. R.App.P. 74(f). Barron was treated for a stab wound in 1982. The treating physician stitched the wound without conducting a physical examination or taking x-rays. At the time that Dr. Tucker saw Barron for a follow-up, Barron complained of continued pain and weakness in his back and left leg. Dr. Tucker also failed to order x-rays. When Barron visited with Dr. Tucker's medical group, Dr. Simmons told him that the pain was due to a muscle spasm. Barron alleged that Dr. Tucker was negligent in failing to associate his complaints of leg pain with the injury he sustained. Barron continued to experience pain in his back and left leg from 1982 to 1993. It was not until eleven years later, in 1993, that Barron discovered the knife blade in his back. From a review of the facts, we conclude that Barron did not have a reasonable opportunity to discover the injury and bring suit within two years of the breach or tort. *See Neagle,* 685 S.W.2d at 12 (where a surgical sponge was left in plaintiff's body, the court found that § 10.01, as applied to that plaintiff's cause of action, violated the open courts provision); *Del Rio v. Jinkins,* 730 S.W.2d 125, 127 n. 1 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (§ 10.01's limitations cannot bar a plaintiff who experienced pain in his stomach shortly after receiving radiation treatments relating to testicular cancer and then consulted with a doctor in a reasonable attempt to

---

1. The open courts provision states:
   All courts shall be open, and every person for an injury done him, in his lands, goods, person

or reputation, shall have remedy by due course of law.
Tex. Const. art. I, § 13.

learn the cause of his injury, but was prevented from having a reasonable opportunity to discover the nature of his injury because of the doctor's alleged misdiagnosis). Thus, as applied to Barron, § 10.01 is unconstitutional and the strict accrual date set out in § 10.01 is inapplicable to the determination of when Barron's cause of action accrued.

■ In cases in which courts have held that § 10.01 is unconstitutional, the courts consequently ruled that although the two-year limitations period had run, the party can still bring its claim because of the open courts provision. Here, the issue is how the accrual date is determined once § 10.01 is found to be unconstitutional. In arguing that the cause of action accrued on the date of the initial treatment, the State cites us to the reasonable time rule discussed in *Weiner v. Wasson*, 900 S.W.2d 316, 321 (Tex.1995).

In *Jinkins*, the court stated that when the two-year limitations period of § 10.01 is unconstitutional as applied to a plaintiff, the plaintiff has a reasonable time in which to bring suit. *Jinkins*, 730 S.W.2d at 127. The reasonable time concept was expanded on in *Weiner*, in dicta, wherein the court stated that

> [t]he reasonable-time rule is a court-made standard, which has heretofore been applied only in a limited number of cases involving adult plaintiffs who, because of the nature of their claim, did not have a reasonable opportunity to discover their injuries and bring suit within a prescribed limitations period. [citation omitted]. The reasonable-time rule, in effect, allows certain adult plaintiffs two years *plus* a reasonable time to bring suit.

*Weiner*, 900 S.W.2d at 321. (emphasis in original). However, the court declined to apply the reasonable time rule to its case. Instead, having determined that § 10.01 was unconstitutional and in trying to determine the limitations period to apply, the court looked to the general tolling and limitations provisions found in the Texas Civil Practice and Remedies Code. *Id.*

The reasonable time rule of two years plus a reasonable time to bring suit, as enunciated in *Weiner*, is similar to § 10.01 in that it establishes a definitive accrual date—the

date of the breach or tort—from which the limitations period starts to run. Thus, if we were to apply the reasonable time rule, Barron's cause of action accrued in 1982 when he was first treated for the stab wound.

However, under similar circumstances, application of the discovery rule was held to be the proper procedure in *Hellman v. Mateo*, 772 S.W.2d 64, 66 (Tex.1989). Once the plaintiff has alleged and presented facts necessary to challenge the constitutionality of the Medical Liability Act, the issue concerning the time when the plaintiff discovered or should have discovered the nature of the injury and cause of action must be resolved. *Id.; Hooten v. Fleckenstein*, 836 S.W.2d 300, 301 (Tex.App.—Tyler 1992, writ dism'd w.o.j.) (where plaintiff challenges the constitutionality of § 10.01 under the open courts provision, the court must focus on the issue of when plaintiff discovered or should have discovered the nature of the injury and cause of action); *Gandara v. Slade*, 832 S.W.2d 164, 166–67 (Tex.App.—Austin 1992, no writ) (plaintiffs alleged in their petition that application of § 10.01 is unconstitutional, and issue became when plaintiffs discovered or should have discovered their cause of action); *Stotter v. Wingo*, 794 S.W.2d 50, 53–54 (Tex. App.—San Antonio 1990, no writ) (plaintiff preserved his contention that § 10.01 is unconstitutional, and issue remained as to whether plaintiff knew or reasonably could have known of his cause of action prior to the expiration of the two-year statute of limitations); *see also Evans v. Conlee*, 741 S.W.2d 504, 506 (Tex.App.—Corpus Christi 1987, no writ) (in enacting the absolute two-year limitations period, the legislature abolished the discovery rule in cases governed by the Medical Liability Act *subject to the open courts provision* of the Texas Constitution). Unlike the reasonable time rule, the discovery rule extends the accrual date of a cause of action until the plaintiff discovers or, through reasonable diligence, should have discovered the nature of the injury.

Because *Hellman* directly addresses the issue, we must follow the precedent of *Hellman* rather than the dicta in *Weiner* which the *Weiner* court also declined to apply in its case. We also note that *Jinkins* was decided

without the benefit of the subsequent *Hellman* decision. *Hellman's* application of the discovery rule once § 10.01 is determined to be unconstitutional comports with the *Weiner* analysis of looking to the general tolling and limitations provisions after § 10.01 is declared unconstitutional as applied. *See also Neagle*, 685 S.W.2d at 13 (Robertson, J., concurring) (when the malpractice limitations period may be unconstitutional as applied to a particular case, principles of common law and equity remain as possible alternatives).

■ Having concluded that § 10.01 is unconstitutional as applied to Barron, we will apply the discovery rule and hold that Barron could not have discovered the nature of his injury until March 1993 when his x-rays revealed the presence of a foreign object in his back. We note that we reach the same result whether we apply *Hellman* or the § 16.003 [2] general limitations analysis that the *Weiner* court actually applied to its case. Because Barron's cause of action accrued after January 1990, the indemnification provisions of Chapter 110 apply to TMLT's indemnity claim.

■ We next consider the State's contention that TMLT is not qualified under Chapter 110 to seek indemnification. The statute provides that "the state shall indemnify the health care professional or health clinic for actual damages...." TEX.CIV.PRAC. & REM. CODE ANN. § 110.002 (Vernon Supp.1996). As defined by § 110.001(3), (4), TMLT does not qualify as either a health care professional or a health clinic. Thus, the State asserts that TMLT may not seek indemnification. The State further contends that in order for TMLT to seek indemnification on Dr. Tucker's behalf, Dr. Tucker must have assigned such a right to TMLT. We disagree.

Chapter 110, when read as a whole and in conjunction with House Bill 18 (the Omnibus Health Care Rescue Act) which enacted Chapter 110, indicates a legislative intent that an insurance company also be subrogated to a physician's right to claim indemnity. *See* TEX.GOV'T CODE ANN. §§ 312.005–.006

(Vernon 1988); *City of Dallas v. Cornerstone Bank, N.A.*, 879 S.W.2d 264, 269–70 (Tex. App.—Dallas 1994, no writ) (statute is construed to give effect to legislative intent and must be liberally construed to achieve its purpose and to promote justice); *Maley v. 7111 Southwest Freeway, Inc.*, 843 S.W.2d 229, 231 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (courts diligently attempt to ascertain and advance the legislative intent when construing statute); *Moore v. City of Corpus Christi*, 542 S.W.2d 720, 723 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) (legislative intent is determined from a consideration of the entire act, its nature, its object, and the consequences that follow from construction thereof).

House Bill 18 was intended, in part, to encourage physicians and other health care professionals to provide charity care. Omnibus Health Care Rescue Act, caption at 4128 (legislature authorized "state indemnification for the provision of charity care or services"); *Pruett*, 900 S.W.2d at 337. As an incentive, House Bill 18 mandated reductions in professional liability insurance premiums for health care professionals providing charity care or services in 10% or more of their patient encounters. Omnibus Health Care Rescue Act § 18 (enacting TEX.INS.CODE ANN. art. 5.15–4). The premium discount must "reflect the reduction in the insurer's liability exposure based on the state's indemnification of the first $100,000 or [in this case] $25,000 under Chapter 110, Civil Practices and Remedies Code, of an eligible malpractice claim against a health care professional or health clinic." TEX.INS.CODE ANN. art. 5.15–4, § 3 (Vernon Supp.1996). Because insurance companies must grant this premium reduction to each qualifying doctor, the legislature must have intended that the insurers be compensated for an amount consistent with reductions in insurance premiums.

Moreover, a review of Chapter 110 reflects that the insurer plays an integral role in the indemnification scheme. The State is not

---

**2.** Section 16.003 provides:

(a) ..., a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.1996).

liable for indemnification unless the health care professional is covered under a valid medical liability insurance policy issued by an insurer. TEX.CIV.PRAC. & REM.CODE ANN. § 110.005 (Vernon Supp.1996). The insurer must inform the attorney general's office of the progress of the case and promptly notify the attorney general's office of any settlement. *Id.* § 110.006(a), (b). Additionally, the insurer for the health care professional or health clinic shall be in charge of the defense of any eligible health care liability claim. *Id.* § 110.006(e). Thus, we conclude that an insurer may proceed on behalf of its insured and seek indemnification. *See Pruett,* 900 S.W.2d at 336 (physician settled claim, insurer notified State of settlement and requested indemnity, and State ordered to indemnify insurer). The State's interpretation of the indemnification statute would thwart and conflict with both the premium discount provisions in the Insurance Code and the legislative intent of House Bill 18.

Another basis for the State's objection to indemnification is that Chapter 110 does not provide for indemnification for destruction of property. The State alleges that an undetermined portion of the settlement was for Barron's claim for loss or destruction of his property. Therefore, the State argues that the settlement was tainted by the property damage claim, and consequently, indemnification under Chapter 110 was improper.

The State is liable for indemnification only if the damages are based on an eligible health care liability claim. TEX.CIV.PRAC. & REM.CODE ANN. § 110.003(a) (Vernon Supp. 1996). Such a claim arises from the physician's treatment, lack of treatment, or other departure from accepted standards of medical care. TEX.REV.CIV.STAT.ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp.1996).

In his sixth amended petition, Barron alleged that Dr. Tucker and other defendants lost or destroyed the x-ray films which were critical to the presentation of his case. Barron alleged that he is entitled to a presumption that the evidence would have been unfavorable to the defendants because of their spoliation of the evidence. As an alternative remedy, Barron prayed for jury instructions on the issue of spoliation. Barron prayed for

damages resulting from defendants' negligence but not from the destruction of property. The settlement agreement stated that Barron's receipt of the settlement sum was for personal injury damages, such as medical expenses and for pain and suffering. Thus, the State's argument that the settlement was tainted because a portion of the settlement was for Barron's destruction of property claim fails.

■ Finally, the State contends that TMLT has not provided information concerning the actual damages for which Dr. Tucker is liable under the settlement, and Chapter 110 contemplates indemnification of a health care professional's actual damages only. The State argues that it is required to indemnify Dr. Tucker only for an amount for which he was personally liable, that is the amount of his deductible under the TMLT policy.

"[T]he state shall indemnify the health care professional ... for actual damages ... which the health care professional ... becomes obligated to pay pursuant to a settlement reached...." TEX.CIV.PRAC. & REM. CODE ANN. § 110.002 (Vernon Supp.1996). The State's liability, in this case, does not exceed $25,000 per occurrence for each health care provider. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 110.004(a)(2) (Vernon Supp.1996); *Pruett,* 900 S.W.2d at 336. Therefore, the settlement amount and not the deductible amount governs the amount of the indemnity payment.

At the hearing on the State's objection to indemnification, TMLT's counsel informed the trial court that TMLT paid $34,750 of the settlement on behalf of Dr. Tucker. The trial court made the following statement:

I don't think there is any question that the Attorney General—the state is not arguing about the amount in question. Obviously, if it was covered, it's not an unreasonable amount. I don't think there is any basis for the state to say it wasn't an unreasonable amount that you all paid to settle this case.

Counsel for the State agreed with the trial court and stated, "[W]e aren't making any argument that Dr. Tucker's defense attorney in the underlying action shouldn't have set-

tled for that amount." Hence, the State did not contest the amount of the settlement sum paid on behalf of Dr. Tucker. Rather, the State objects to the lack of information concerning the deductible amounts for which Dr. Tucker was personally obligated to pay. As we have stated, the settlement sum controls, not the deductible. Therefore, TMLT is entitled to an indemnity of $25,000.

We conditionally grant a writ of mandamus directing the trial court to vacate its order sustaining the State's objection to indemnification and to render an order approving the settlement and directing the State to make the required indemnity payment. The writ will not issue unless the trial court fails to comply with the opinion of this Court.