**Rudy C. ORTIZ, Appellant,**

v.

**Bob THOMPSON, Appellee.**

**No. 6187.**

Court of Civil Appeals of Texas, Waco.

July 31, 1980.

---

Paul D. Rich, San Antonio, for appellant.

Randall B. Wood, Ray & Wood, Austin, for appellee.

## OPINION

JAMES, Justice.

This is an election contest case. Appellant–Contestant Rudy C. Ortiz and Appellee–Contestee Bob Thompson were the only two candidates for the position of Councilperson, Place 6, for the City of San Antonio in a municipal election held on Saturday, April 7, 1979. Thompson was certified as the winner of that election, the return thereof showing 4,186 votes cast for Thompson and 4,102 votes cast for Ortiz. Ortiz brought this suit contesting the election, alleging as grounds therefor: (1) that prior to the election "the City of San Antonio, Texas, designated new polling places", at least one of which was located in District 6, that such changes "were required to be precleared by the Department of Justice", that the city failed to obtain such preclearance, and that the changes therefore violated the Federal Voting Rights Act of 1965, 42 U.S.C. Sec. 1973 et seq.; (2) that "scores of voters" were denied the right to vote because they were "erroneously registered to precincts in which they did not reside"; (3) that during absentee voting, Thompson's campaign workers engaged in "fraudulent and unlawful conspiratorial actions" which "suppressed the will of the legal voters" and violated V.A.T.S. Election Code Art. 5.05 and other laws, to wit: "falsely impersonated officials and picked up completed ballots and caused the ballots not to be returned to the proper officials by suppressing same and/or destroying them; gave false information and directions regarding the procedures to vote; requested ballots for prospective electors who in fact had not requested same; fraudulently suggested to qualified voters that by filling in some ballots and other forms that such persons were in fact voting, thereby causing such voters not to cast official ballots; gave qualified voters who had not applied or received a ballot by mail, a ballot to be cast in their homes; and (4) that "several qualified electors were denied their rights to vote . . . due to the severe mechanical problems occurring shortly after the polls opened."

Trial was to the court without a jury, after which the trial court rendered judgment in favor of the Contestee Thompson. Said court made Findings of Fact and Conclusions of Law, which included, *inter alia*, the following:

### "FINDINGS OF FACT

"3. The canvassing board canvassed the results and certified that Robert S. Thompson received 4,186 votes and Rudy C. Ortiz received 4,102 votes. * * *

"5. Seventeen persons in District 6 had voter registration certificates which contained erroneous precinct numbers.

"6. The evidence did not establish that any of the seventeen persons referred to in finding of fact number 5, were prevented or dissuaded from voting because of the error. * * *

"8. There was evidence that seventeen (17) persons over the age of 65 voted a mail absentee ballot for Councilperson, District 6, but their ballots were not received by the City Clerk and not counted.

"9. There was evidence that there were 1,192 persons over the age of 65 registered to vote in District 6.

"10. There was no evidence as to how many persons over the age of 65 voted in the election in District 6.

*    *    *    *    *    *

"12. The number of votes challenged, including the number of persons who were alleged to have been prevented from voting, was less than the difference in the margin by which Robert S. Thompson was declared the winner.

"13. The Court finds that the outcome of the election for Councilperson, District 6 is not impossible to determine.

"14. The facts before the Court show that the outcome as declared by the canvassing board declaring Robert S. Thompson the winner of the election is the correct result of the election.

## "CONCLUSIONS OF LAW

"1. The Court concludes as a matter of law that the Court was without jurisdiction to adjudicate any alleged violations of the Federal Voting Rights Act because the Act specifies that such adjudication must be before a three–judge Federal District Court.

"2. The Court concludes as a matter of law that the Court was without jurisdiction to adjudicate any alleged violation of the Federal Voting Rights Act in a contest of election under Texas law because the grounds for a Texas Election Contest must be found or implied in the Texas Election Code. * * *

"4. The Court concludes that Contestant, having failed to prove that irregularities occurred in the holding of the election which affected a number of votes sufficient to change the outcome of the election, is not entitled to judgment as a matter of law."

We affirm the trial court's judgment.

■ Appellant Ortiz brings this appeal on seven points of error but the major thrust of his appeal concerns the Federal Voting Rights Act, 42 U.S.C. Sec. 1973 et seq., and its relationship to election contests in our Texas state courts. As stated above, Ortiz's pleadings alleged that the election in question should be set aside and a new election ordered because the City of San Antonio violated the Voting Rights Act. 42 U.S.C. Sec. 1973c provides that a state or political subdivision covered by the Act which seeks to administer a change in voting standards or procedure different from those in effect on November 1, 1964, must first submit the proposed change to the Attorney General of the United States or obtain a declaratory judgment from the United States District Court for the District of Columbia that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color. . . ." Ortiz alleged that such preclearance had not been obtained by the City before this election. When Ortiz attempted to introduce evidence in support of this allegation, the trial court ruled the evidence inadmissible and basically held: (1) that state courts have no jurisdiction to enforce the Federal Voting Rights Act and (2) that violations of the Act are not grounds for contesting an election under our state law in our state courts. Ortiz argues that both of these conclusions are erroneous.

Ortiz relied specifically on 42 U.S.C. Sec. 1973c as the basis for his alleged violations of the Voting Rights Act. We note that Sec. 1973c of said Act contains the following language:

"Any action under this section shall be heard and determined by a court of three

judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the (U.S.) Supreme Court."

The express language of Sec. 1973c jurisdiction in voting rights cases is limited to *Federal* District Courts, and state courts have no power to adjudicate such actions.

The United States Supreme Court, in *Allen v. Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed. 201 (1969), held that "the disputes involving the coverage of Sec. 5 be determined by a district court of three judges" 393 U.S. at 563, 89 S.Ct. at 830. Following *Allen,* lower courts have held that a single Federal judge cannot adjudicate issues arising under the Voting Rights Act of 1965. *Sumter County Democratic Executive Committee v. Dearman,* 514 F.2d 1168, 1170 (5th Cir. 1975). It would seem reasonable to conclude that a single state judge would also be powerless to adjudicate issues under the Act, and at least one Federal court has so held. *Beatty v. Esposito,* 411 F.Supp. 107 (E.D.N.Y.1976). We recognize that in *Allen* the Supreme Court did not expressly state that the term "district court" referred only to a *Federal* district court, but that limitation can be clearly inferred from the opinion as a whole. The court in *Allen* concluded that the potential "clash between Federal and state power and the potential disruption to state government" more than justified Congress's position that such matters must be adjudicated by a three–judge panel. Thus the court held that *all* matters involving the Voting Rights Act, specifically Sec. 1973c, must be brought before a three–judge court. The Court also pointed out in *Allen* that "direct appeal may be taken from a three–judge court to this Court" (the U.S. Supreme Court). This appellate procedure is uniquely limited to appeals from three–judge Federal courts, and we know of no law that would suggest that appeal can be taken directly from a state district court. Nor is there any provision in our State law for District Judges to sit in panels of three, or in any manner except singly. We therefore hold that the trial court properly ruled that it had no jurisdiction to enforce the Federal Voting Rights Act.

Ortiz asserts that, even if the trial court was powerless to enforce the Voting Rights Act per se, the court nonetheless should have considered the alleged violation of the Act as a ground under state law for contesting the election. In other words, Ortiz contends that his evidence relating to changes in polling places and their "impact" on the election process should have been considered as a ground, under state law, for contesting the election. This contention has no merit.

■■ An election contest in Texas is a statutory proceeding and an election may only be contested on grounds expressly or impliedly authorized by the Election Code. 21 Tex.Jur.2d Elections, Sec. 158, p. 413; *Stelzer v. Huddleston* (Tyler Tex.Civ.App. 1975) 526 S.W.2d 710, writ dismd.; *Magnolia Petroleum Co. v. Jackson County Water Control and Improvement District No. 1* (Galveston Tex.Civ.App.1956) 290 S.W.2d 310, no writ. Texas election law expressly allows municipalities to designate polling places. Art. 2.05, Texas Election Code, reads in part as follows:

> "The election precincts for municipal elections and the location of the polling place in each precinct shall be designated by the governing body of the municipality."

There was no pleading or proof that the City violated this or any other Texas statute relating to the location of polling places. Furthermore, the evidence in this case showed that the City Council did in fact vote to designate the polling places in District 6, that Mr. Ortiz was a City Council member at the time, that Mr. Ortiz's assistant suggested the locations for the polling places in District 6, and that Mr. Ortiz voted affirmatively to approve the locations selected for the April election. Under the law and the facts here presented we cannot find error in the trial court's refusal to consider the change in polling places as a ground for challenging this election. It seems strange to us that Contestant Ortiz would complain of the City's action in setting up a polling place for District 6 at the

"Our Lady of the Lake" College, when the undisputed evidence shows that he as a member of the City Council voted in favor of this action.

 Ortiz's final contention concerns the trial court's refusal to permit him to amend his pleadings during the trial of this case. In the fourth day of the trial Ortiz offered a trial amendment alleging that "a material number" of absentee voters had received assistance from Thompson campaign workers; that such assistance violated Art. 5.05, Subdivision 15, Texas Election Code; that the said ballots were voted and counted for Thompson; that the ballots were void; and that the ballots, if ascertainable, would materially alter the outcome of this election. The trial court refused to allow this amendment. Ortiz argues that he did not know that the assistance had been provided to the voters until the day before the amendment was offered. He further claims that Thompson was fully aware of the activities complained of and could not have been surprised by the amendment. Ortiz argues that, under such circumstances, the trial judge abused his discretion by refusing to allow the amendment.

In ordinary civil cases, trial amendments should be granted freely in the absence of a showing of prejudice by the opposing party. Rule 66, Texas Rules of Civil Procedure. However, this is not an "ordinary civil case." This is an election contest. Art. 9.03, Texas Election Code, requires that:

> "Any person intending to contest the election of any one holding a certificate of election for any office mentioned in this law, shall, within thirty (30) days after the return day of election, give him a notice thereof in writing and deliver to him, his agent or attorney, a written statement of the ground on which such contestant relies to sustain such contest . . . ."

The notice required by Art. 9.03 is jurisdictional and the grounds that may be asserted by a contestant are strictly limited to those grounds that have been included in notice(s) delivered within the thirty–day period. This trial amendment set up a new ground of contest, was sought to be filed more than sixty days after return day of the election, and was too late. *Moore v. City of Corpus Christi* (Corpus Christi Tex. Civ.App.1976) 542 S.W.2d 720, n. r. e. See also *McCasland v. Steele* (Waco Tex.Civ. App.1973) 496 S.W.2d 937, no writ. In the instant case, the trial amendment was offered on June 21, 1979, more than sixty days after return day of the election. The trial amendment set forth a ground which was not alleged in Ortiz's original or amended petitions. Under these facts, the trial court acted properly in refusing to permit the trial amendment.

Having carefully considered all of Appellant's points of error, we overrule same as being without merit. Judgment of the trial court is affirmed.

AFFIRMED.