Ciro D. RODRIGUEZ, Appellant,

v.

Henry CUELLAR, Appellee.

No. 04–04–00335–CV.

Court of Appeals of Texas, San Antonio.

July 12, 2004.

Randall Buck Wood and Doug W. Ray, Ray, Wood & Bonilla, L.L.P., Austin, for Appellant.

Steve Bickerstaff, David Mendez, C. Robert Heath, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P, Austin, Baldemar Garcia, Jr., Martha Cigarroa De Llano, Person, Whitworth, Borchers & Morales, L.L.P., Laredo, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, and PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

Because of the high degree of public interest in this case and to maintain uniformity of the court's decisions, a majority of the court has granted Henry Cuellar's motion for en banc reconsideration. *See* TEX. R.APP. 49.7. Accordingly, we withdraw the panel's opinion and judgment and substitute the following in their place.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of an election contest between Ciro D. Rodriguez, the incumbent representative for the United States Twenty–Eighth Congressional District of Texas, and Henry Cueller, who challenged Rodriguez in the 2004 Democratic primary. After the votes were counted, Rodriguez appeared to be the winner by 145 votes. A district-wide recount requested by Cuellar resulted in a "net swing" of 348 votes in Cuellar's favor. Shortly thereafter, Cuellar was declared the winner by 203 votes.

On April 14, Rodriguez timely filed an original petition contesting the election. *See* TEX. ELEC.CODE ANN. § 232.008(c) (Vernon 2003) (election contest petition must be filed within ten days after votes are canvassed). Rodriguez's original petition consists of four paragraphs. Paragraph I, entitled "Factual Background," sets forth a brief summary of the initial canvass numbers, the recount numbers, and the "net swing in Cuellar's favor." Paragraph II, entitled "The Case," details the "huge vote count change which was almost totally confined to the early and mail-in vote in only two of the eleven counties, Webb and Zapata." Paragraphs III and IV of Rodriguez's original petition allege as follows:

III.

Contestant and voters for contestant were subjected to disparate voting systems and procedures that violated their equal protection and due process rights under the Texas Constitution. Such violations prevent the Court from determining the true outcome of the election.

IV.

Contestant says there were irregularities in the casting, counting and recounting of the votes in the election which such irregularities reversed the true outcome of the election.

Paragraph V of Rodriguez's original petition alleges the district court has jurisdiction and venue over the contest, while paragraph IV concerns the discovery plan.

Cuellar timely filed his answer to the contest, *see id.* § 232.008(c) (answer must be filed within five days after service of an election contest petition), and a plea to the jurisdiction. In both, Cuellar contended Rodriguez's original petition did not call into question a sufficient number of votes to change the outcome of the election and, consequently, failed to allege a contest within the jurisdiction of the court. Under the Election Code, trial should have been scheduled for five days later—April 25. *See id.* at § 232.012 (requiring trial in election contest five days after filing of answer but providing for a short continuance).

On April 28 Rodriguez filed his first amended original petition. In this amended petition, paragraphs I, II, and III are identical to paragraphs I, II, and III of the original petition. Added to the amended petition was a new paragraph IV, which states as follows:

A. In excess of 100 persons cast ballots in the election at issue here who were not qualified to vote in the election or were permitted to cast votes in the election but should not have under the laws of this State.

Persons voted in the election that:

1. were registered at addresses at which they did not reside;

2. voted at polling places in areas where they did not reside;

3. had absented themselves from a residence where they were registered for a time that was not temporary;

4. were not properly registered in a manner that qualified them to vote in the election;

5. showed addresses on their voter registration applications that were vacant lots or abandoned houses;

6. gave information to election officials in order to vote in this election that was inaccurate or false;

7. cannot be found to exist;

8. persons shown voting but did not vote;

9. were assisted in voting in a manner contrary to law;

10. registered at addresses that do not exist; and/or

11. someone other than the voter voted the ballot in a manner not permitted by law.

B. In the Webb County recount, votes were recorded for [Cueller] that should not have been so counted. One hundred fifteen votes were recorded for [Cueller] where there is no record that these ballots were ever cast by voters in the election and were not shown by the official counts on election day.

C. In the Webb County recount, Contestee Cuellar was recorded as having gained 177 votes where [Rodriguez] was recorded as gaining 0 votes. Furthermore in the recount, the number of ballots that had been recorded in the original count as being "no" votes in District 28 were reduced by 52 votes. This number added to the 115 new undocumented additional votes recorded in the recount results in 177 new votes, every one of which appears to have been awarded to Cuellar. Such a result defies any level of credibility.

Additionally, paragraph IV in the original petition became paragraph V in the amended petition with the addition of a one-sentence paragraph, as follows:

V.

[Rodriguez] says there were irregularities in casting, counting and recounting of the votes in the election which such irregularities reversed the true outcome of the election.

The illegally cast votes as referenced in paragraph IV, either standing alone or in combination with the errors in the Webb County recount, (without regard to Zapata County) are sufficient in numbers to have affected the 203 vote lead by [Cuellar] and changed the outcome of the election.

Paragraphs IV and VII in the amended petition are identical to paragraphs V and VI of the original petition. In short, the amended petition differs from the original petition in two respects: (1) the addition of a new paragraph IV, which sets forth the ways in which "100 persons casts ballots in the election at issue here who were not qualified to vote in the election or were permitted to cast votes in the election but should not have under the laws of this State"; and (2) the addition in paragraph V of a sentence stating that the illegally-cast votes referenced in paragraph IV would be sufficient to change the outcome of the election.

The day after Rodriguez filed his amended petition, the trial judge indicated that, court space permitting, the trial would be conducted on May 10 or 11. A few days later, Cuellar amended his plea to the jurisdiction. In his amended plea, Cuellar asserted that the trial court's jurisdiction was limited to Rodriguez's recount allegations. Cuellar also moved to strike the amended petition, asserting that the illegal vote claim was a new basis for the contest and should be stricken because it was prejudicial on its face or otherwise resulted in surprise. The trial court granted Cuellar's amended plea to the jurisdiction, struck the illegal vote allega-

tions, and excluded evidence concerning illegal voting at trial. The trial court also granted Rodriguez's earlier motion, which asked to recount and inspect the ballots because there were irregularities in the counting and recounting of the ballots. After the judicially-supervised recount, Cuellar was left with only a fifty-eight vote margin of victory.

On May 11, when the case was called for trial, Rodriguez argued that logistical problems had prevented a proper inspection of ballots and permitted inspection of less than ten percent of the Webb County ballots and orally moved to continue or recess the trial. The trial court denied the motion but granted Rodriguez permission to file an untimely written motion. Rodriguez's attorney then informed the court that, as a result of the court's rulings, he was unable to present evidence of a sufficient number of irregular ballots to alter the outcome of the election. The court accordingly signed a judgment in Cuellar's favor.

### PLEA TO THE JURISDICTION

■ Rodriguez contends the trial court erred in granting Cuellar's plea to the jurisdiction because the court's jurisdiction to consider his election contest was properly invoked by his original petition and was unaffected by his amended petition. We agree.

#### Standard of Review

Whether a trial court has subject matter jurisdiction is a question of law and is therefore reviewed de novo. *See Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004).

#### Discussion

Cuellar argues, and the trial court ruled, the jurisdictional issue is governed by this court's opinion in *Tiller v. Martinez*, 974 S.W.2d 769 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.), and specifically the court's statement that, "[b]ecause the petition stated the grounds upon which Martinez contested the election and pleaded sufficient facts to give Tiller notice of such, it was sufficient to invoke the jurisdiction of the district court." Cuellar's and the trial court's reliance on *Tiller* is misplaced.

At issue in *Tiller* was "the election results in the Martinez–Tiller race" for a place on the Alice Independent School District board of trustees. *Id.* at 771. After Tiller was declared the winner of Place 3 by fifteen votes, "Martinez filed an original petition contesting the election results, but erroneously referred to it as the Place 2 race rather than the Place 3 race." *Id.* In response "Tiller filed an answer, which included a plea to the jurisdiction due to the incorrect statement regarding the specific place contested." *Id.* Recognizing his error, "Martinez filed a supplemental petition ... stating that he challenged the election results for Place 3." *Id.* On appeal, Tiller argued "Martinez's supplemental petition was untimely to challenge the election results of Place 3 because it was not filed until ... outside the statutory 30–day period" for filing a contest. *Id.* at 772. We held Martinez's original petition was sufficient to invoke the trial court's jurisdiction because it "stated the grounds upon which Martinez contested the election and pleaded sufficient facts to give Tiller notice of such." *Id.* at 773.

In short, in *Tiller* we did not confront or decide the issue presented here—whether an election contest petition may be amended after the statutory deadline to add a new basis for the contest. The answer to that question is inherent in section 231.002 of the Election Code, which provides that "unless otherwise provided ... the rules governing civil suits in the district court apply to an election contest," TEX. ELEC.

CODE ANN. § 231.002 (Vernon 2004), and one of the rules governing civil suits in the district courts—Texas Rule of Civil Procedure 63, which allows parties to amend their pleadings.

In support of his jurisdictional argument, Cuellar also relies on *Ortiz v. Thompson*, 604 S.W.2d 443, 447 (Tex.App.-Waco 1980, no writ), and *Moore v. City of Corpus Christi*, 542 S.W.2d 720, 722 (Tex. Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.). But again, Cuellar's reliance on those cases is misplaced. Both *Ortiz* and *Moore* were decided under article 9.03 of the 1967 Election Code. At that time, article 9.03 provided that "[a]ny person intending to contest the election of any one holding a certificate of election for any office mentioned in this law, shall, within thirty (30) days after the return day of the election, give him a notice thereof in writing and deliver to him, his agent or attorney, a written statement of the ground on which such contestant relies to sustain such contest." Acts 1951, 52nd Leg., p. 1097, ch. 492, art. 131. This "two-fold notice" was held in *Moore* to be "jurisdictional," "mandatory," and non-waivable. *Moore*, 542 S.W.2d at 722. Accordingly, "[s]ince written notice of the additional ground of contest was not given to the contestees within thirty days after the official result of the election was declared, there was no compliance with Article 9.03 of the Election Code as to that ground"; and "the district court did not acquire jurisdiction of the election contest with respect to the ground of invalidity set out in the amended petition." *Id.* at 723. Because article 9.03 is no longer the law in Texas, neither *Moore* nor *Ortiz* supports the trial court's ruling granting Cuellar's amended plea to the jurisdiction.

Indeed, what has taken the place of article 9.03's two-fold notice requirement is section 231.002, which incorporates the rules governing civil suits generally—including Rule 63. Given this, we decline to import the requirements of article 9.03 into today's Election Code. *See Cook v. Epperson*, 288 S.W. 556 (Tex.Civ.App.-San Antonio 1926, no writ) ("The form of the pleadings or lack of form would not be a jurisdictional matter. .... The statute declares that the district court has jurisdiction of election contests, and the pleadings of appellants, no matter what their form might be, could not destroy the jurisdiction.").

### PLEADING AMENDMENT

■ Rodriguez next argues the trial court abused its discretion in striking his amended petition. We disagree.

### *Applicable Law and Standard of Review*

■ The law regarding pleading amendments is well-settled. Rule 63 of the Texas Rules of Civil Procedure provides as follows:

> Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX.R. CIV. P. 63. Construing this rule, the Supreme Court of Texas has held that "[a] court may not refuse a trial amendment unless (1) the opposing party pres-

ents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face." *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994) (citing *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990)). "The burden of showing surprise or prejudice rests on the party resisting the amendment." *Id.* (citing *Greenhalgh*, 787 S.W.2d at 939). "If the trial amendment is not mandatory, then the decision to permit or deny the amendment rests within the sound discretion of the trial court." *Id.* (citing Tex.R. Civ. P. 66; *Greenhalgh*, 787 S.W.2d at 939). "In such a case, the court's decision to allow or deny a trial amendment may be reversed only if it is a clear abuse of discretion." *Id.* (citing *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex.1980)). *See also Chapin & Chapin, Inc. v. Texas Sand & Gravel Co., Inc.*, 844 S.W.2d 664, 664 (Tex.1992).

■■■ A trial court abuses its discretion with respect to factual matters if, under the record, it reasonably could have reached only one decision and it failed to do so. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion...." *Id.* Whether an amended petition sets up a new cause of action presents a question of law, which is reviewed de novo. *See City of Wichita Falls v. Lipscomb*, 50 S.W.2d 867, 873 (Tex.Civ.App.-Fort Worth 1932, writ ref'd). In an election contest, "cause of action" translates to a "basis" for the contest. *See Bailey v. Fly*, 97 Tex. 425, 79 S.W. 299, 300 (1904) (rejecting argument that 1895 provision permitting amendment of statement and reply in election contest "as in civil cases" did not include right to set up "new matter—that is, new bases or

grounds of defense"). In reviewing the trial court's ruling on a proffered amendment in an election contest, "due regard should be paid to the nature of the proceeding and the importance of a speedy trial, but at last the rules governing the amendment of pleadings in civil cases are to be applied." *Id.*

### Discussion

■■■ Rodriguez first argues that the trial court erred in striking his amended petition because Cuellar did not present evidence of surprise or prejudice. We agree Cuellar did not show surprise or prejudice; indeed, he was not required to do so. Under *Kilpatrick*, in the absence of a showing of surprise, we look to whether Rodriguez's amended petition asserts a new basis for the contest and is thus prejudicial on its face. *See Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 91 (Tex. App.-Houston [1st Dist.] 2003, no pet.) ("For an amendment to be prejudicial on its face, it must (1) assert a new substantive matter that reshapes the nature of the trial itself, (2) be of such a nature that the opposing party could not have anticipated it in light of the development of the case, and (3) detrimentally affect the opposing party's presentation of the case.")

As noted above, the amended petition differs from the original petition in two respects: (1) the addition of a new paragraph IV, setting forth the ways in which "100 persons casts ballots in the election at issue here who were not qualified to vote in the election or were permitted to cast votes in the election but should not have under the laws of this State"; and (2) the addition in paragraph V of a sentence stating that the illegally-cast votes set forth in paragraph IV are sufficient to change the outcome of the election. Rodriguez argues these additions do not set forth a new basis for the contest but merely "provide

more detailed factual information on why and how many illegal votes were cast and counted" and thus expand upon a basis for the contest already pleaded in his original petition. In support of his argument, Rodriguez points to paragraph IV of his original petition: "[Rodriguez] says there were *irregularities* in *casting,* counting and recounting *of the votes in the election* which such irregularities reversed the true outcome of the election." However, neither a "cause of action"—nor a "basis" for a contest—is pleaded by the use of general terms. Rather, "[a] petition is sufficient if it gives fair and adequate notice of the *facts* upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex. 1982).

Rodriguez's original petition does not plead even one fact from which a reasonably competent attorney could have ascertained that a basis for the contest was illegal voting. The original petition described a number of vote count irregularities in nine separate paragraphs covering two and one-half pages. That factual recitation was the context in which a reasonable attorney would have read the next paragraph alleging the basis of the election contest as "irregularities in the casting, counting and recounting of the votes." Because Rodriguez's original petition did not include a single page, paragraph, sentence, or word referring to anyone as having voted illegally, any reasonable person reading the original petition would be led to conclude that the sole basis for his election contest was the vote count. Under these circumstances, we—like the trial court—have no choice but to hold that the illegal voting allegation pleaded in Rodriguez's amended petition was a new basis for the contest which was not set forth in his original petition.

Had the amended petition been allowed, the nature of the case would have been reshaped from one of simply reviewing vote counting procedures to one requiring a lengthy trial in which the numerous specific allegations contained in the amended petition would require testimony from potentially hundreds of individuals on several fact-intensive issues, including their legal residency and polling place, whether they were properly registered to vote, whether they gave false information to election officials in order to vote, and whether they were improperly assisted when they voted. *See Francis,* 130 S.W.3d at 91. Moreover, in light of the original petition's focus on the recount, Cuellar could not have reasonably anticipated illegal voting as a basis for the contest. *Id.* And the addition of the illegal voting claims would necessarily have had a detrimental effect on Cuellar's case presentation. *Id.* We therefore hold that Rodriguez's amended petition was not merely procedural but was prejudicial on its face, and the trial court was well within its discretion to strike the new allegation of illegal voting.

### CONTINUANCE

Finally, Rodriguez argues the trial court abused its discretion in denying his motion for continuance or trial recess. We again disagree.

### *Standard of Review*

 Whether to grant or deny a motion for continuance is a matter committed to the trial court's sound discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). The trial court's action will not be disturbed unless the record discloses a clear abuse of discretion. *Id.* In deciding whether a trial court abused its discretion, the appellate court does not substitute its judgment for the trial court

but decides only whether the trial court's action was arbitrary and unreasonable. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986). Before the appellate court reverses the trial court's discretionary ruling, it should appear clearly from the record that there has been a disregard of the rights of a party. *Id.*

### Discussion

In announcing not ready for trial and in requesting the continuance, Rodriguez's attorney said they had been unfairly limited in their ability to inspect the ballots in Webb County. He said that without a full inspection, the evidence that could be presented in the trial on the merits would be incomplete. Based on the inspection that had been completed, irregularities had been identified in twenty-nine ballots, which was insufficient to overcome the fifty-eight vote margin. Rodriguez's attorney represented that it would take an additional week to complete the inspection. The trial judge said that "[w]hen [he] granted the motion to recount and the request for inspection, it was with the understanding that it would be done by sampling, and that the inspection could be done within the time that the [ ] recount was done. And there was no indication up until this morning that [he] recalled that more time would be needed for the inspection."

■ At the earlier hearing on the motion for recount and motion to inspect, Rodriguez's attorney said he believed the recount could be completed in one day. Cuellar's attorney disagreed, contending the recount would take a "couple or two or three days to get it all sorted out." Although there was some delay in releasing the ballots in Webb County, Rodriguez's attorney said he could conduct the inspection commensurate with the recount. Since the recount was completed despite the shortened schedule, based on the representations that were made, the inspection should also have been completed. Based on the representations made by Rodriguez's attorney at the hearing at which the trial court granted the motion to inspect the ballots, the trial court did not abuse its discretion in denying the motion for continuance or trial recess.

### CONCLUSION

■ The purpose of an election contest is to determine whether the outcome of an election is correct. *See* Tex. Elec.Code Ann. § 221.003(a) (Vernon 2003). However, elections are politically time sensitive, and legislative remedies for contested elections are to be strictly followed. *See Duncan v. Willis*, 157 Tex. 316, 302 S.W.2d 627, 630 (1957). This case is on a legislatively mandated fast track, and the election code sets out the accelerated procedures for the trial and appeal of this election contest. In addition, this court is bound by the ordinary rules and principles of law that govern the review of cases on appeal. As in all cases that come before us, our task is straightforward: to determine whether the trial court made any harmful legal errors. This court is not authorized to, and does not, substitute its collective judgment for that of the trial court.

We conclude the trial court had jurisdiction to consider the allegations contained in Rodriguez's amended petition, and that its ruling to dismiss the illegal vote allegations for lack of jurisdiction was error. However, the error was harmless because the trial court acted fully within its discretion under ordinary rules of civil procedure to strike the amended petition for the reason that it raised a new basis for the contest and was thus prejudicial on its face.

The trial court's judgment is affirmed. Costs of court are assessed against appellant. No further motions for rehearing will be considered in this appeal. *See* Tex. Elec.Code Ann. § 232.014(e) (Vernon 2003).

Concurring and dissenting opinion by CATHERINE STONE, Justice, joined by ALMA L. LÓPEZ, Chief Justice.

Dissenting opinion by ALMA L. LÓPEZ, Chief Justice.

Concurring and dissenting opinion of CATHERINE STONE, Justice, joined by ALMA L. LÓPEZ, C.J.

I concur in the majority's conclusion that the trial court erred in granting the plea to the jurisdiction but did not abuse its discretion in denying the motion for continuance. I disagree, however, with the majority's conclusion that the trial court did not abuse its discretion in striking Rodriguez's amended petition.

In footnote 14 of his motion for rehearing, Cuellar acknowledges that Rodriguez's amended petition was filed more than seven days before the date of trial. *See* Tex.R. Civ. P. 63 (leave required only if amended pleading filed within seven days of trial or thereafter). The right to amend more than seven days before the date of trial is only subject to the opposing party's right to show surprise. *Porter v. Nemir*, 900 S.W.2d 376, 384 (Tex.App.-Austin 1995, no writ). When an amended pleading is filed more than seven days before trial, courts look at the following factors to determine whether the amended petition operates as a surprise: (1) how long the suit had been on file before the amended petition was filed; (2) how soon before trial the amendment was offered; (3) whether the amended petition presented a new cause of action; (4) whether the newly asserted cause of action was based on re-

cently discovered matters; and (5) whether the opposing party alleged surprise. *See, e.g., Porter*, 900 S.W.2d at 384; *Stevenson v. Koutzarov*, 795 S.W.2d 313, 321 (Tex.App.-Houston [1st Dist.] 1990, writ denied). Since the burden in these circumstances is on the opposing party to show surprise, I believe the fifth factor should require more than a mere allegation of surprise and should, instead, require proof of surprise.

Applying these factors to the present case, I believe it was an abuse of discretion for the trial court to conclude that the amended petition operated as a surprise. The factors present in this case are:

(1) Unlike other cases in which the lawsuit had been on file one to two years before the amended petition was filed, *see, e.g., Porter*, 900 S.W.2d at 384; *Stevenson*, 795 S.W.2d at 321, the lawsuit in this case had been on file only fourteen days before the amended petition was filed. Six days after the original petition was filed, Cuellar filed his special exceptions, and the amended petition was filed eight days after the special exceptions were filed.

(2) Although the amended petition was filed thirteen days before trial, the trial occurred only twenty-seven days after the original petition was filed.

(3) For the reasons stated below, I disagree with the majority's conclusion that the amended petition contained a "new" cause of action or basis for the contest.

(4) Given the short period of time between the first official determination that Rodriguez was the candidate on March 9, 2004, and the trial date on May 11, 2004, the clarification provided in the amended petition was necessarily based on recently discovered matters.

(5) For the reasons stated below, based on the record before us, Cuellar has failed to demonstrate surprise.

**262**

Because Cuellar failed to show that Rodriguez's amended petition operated as a surprise, I would hold that the trial court abused its discretion in striking the amended petition.

The majority concludes that the trial court did not abuse its discretion in striking Rodriguez's amended petition because it contained a "new" cause of action, which the majority refers to as a new basis for the contest. This conclusion is based on the majority's contention that the general allegation regarding "irregularities in the casting [ ] of ballots" is meaningless for purposes of pleading a cause of action. This contention is contrary to the well-established principle in Texas law that pleadings are to be liberally construed. Cuellar recognized that the allegation had meaning when he filed his special exceptions, and Rodriguez responded to the special exceptions by providing further clarification, just as in any other case governed by the Texas Rules of Civil Procedure. The requested amendment did not contain a "new" cause of action or basis for the contest. The amended petition simply attempted to further define or elaborate on the general allegation by providing more specific detail regarding the types of irregularities. *See, e.g., Gen. Prop. Inv., Inc. v. Toeppich,* No. 04–97–00060–CV, 1999 WL 93360, at * 5–6 (Tex.App.-San Antonio Feb. 17, 1999, pet. denied) (holding trial court had no choice but to grant amendment that elaborated on causes of action already asserted) (not designated for publication); *Zavala v. Trujillo,* 883 S.W.2d 242, 245 (Tex.App.-El Paso 1994, writ denied) (noting allegation was not new cause of action but further defined general allegation); *Southwestern Bell Tel. Co. v. Griffith,* 575 S.W.2d 92, 98 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.) (finding allegations did not set up a new cause of action but merely elaborated on prior allegations).

The majority concedes that Cuellar failed to show surprise, and our record supports this concession. In Contestant's Response to Contestee's First Amended Special Exceptions and Pleas to the Jurisdiction, Rodriguez stated that he had supplied Cuellar with the names of approximately 262 illegal voters. In addition, our record contains an advertisement published in a Laredo newspaper on April 24, 2004, in which Cuellar acknowledged that Rodriguez's investigators were contacting voters concerning their votes.[2] Cuellar's attorney also sent a letter to the Webb County District Attorney on April 26, 2004, in which he stated that Rodriguez had "been contacting individual voters in an apparent attempt to try to disqualify voters and ballots in Webb County."[3] Furthermore, Cuellar's attorney acknowledged at the hearing on April 29, 2004, that he had been provided with a letter listing the names of the voters Rodriguez was challenging. Cuellar's attorney also acknowledged at the hearing that he was aware of Rodriguez's efforts to obtain further proof to expand his general allegation, asserting that Rodriguez was "literally trolling in an effort to find specific individuals who may or may not have registered at the correct address. And by 'trolling' I mean what occurred was a group of people, and I've heard 50 representatives, of Mr. Rodriguez were sent to Webb County, went door by door literally trying to find people who they thought may have voted and may be illegal."

---

2. The newspaper advertisement was published four days before Rodriguez filed his amended petition.

3. The letter was sent two days before Rodriguez filed his amended petition.

In view of Rodriguez's pleading and the surrounding circumstances, I would conclude that Rodriguez's original petition contained a general allegation relating to invalid votes being cast and that Cuellar had fair notice of Rodriguez's allegation or claim regarding irregularities in the casting of votes. Accordingly, based on the record before us, I would hold that the trial court abused its discretion in striking Rodriguez's amended petition.

Under the majority's reasoning, if Rodriguez had elected not to include the details regarding the vote count irregularities in the original petition, the allegation of "irregularities in the casting, counting and recounting of votes" would have been insufficient to state *any* claim. Even if this were the case, in every other situation in which pleadings are found to be deficient, whether in response to special exceptions or a plea to the jurisdiction, the plaintiff must be given a reasonable opportunity to amend his pleadings. *See Harris County v. Sykes,* 136 S.W.3d 635, 639–40 (Tex.2004); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). In upholding the trial court's striking of Rodriguez's amended petition, the majority effectively circumvents the "protective features of special exception procedure" which the Texas Supreme Court has cautioned against. *Texas Dept. of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex. 1974); *see also Friesenhahn v. Ryan,* 960 S.W.2d 656, 658 (Tex.1998); *Castano v. San Felipe Agricultural, Mfg., & Irrigation Co.,* —— S.W.3d. ——, at —— ——, No. 04–01–00382–CV, 2004 WL 839693, at *7–8 (Tex.App.-San Antonio Apr.21, 2004, no pet. h.). The Texas Legislature expressly provided, "Except as otherwise provided by this subtitle, the rules governing civil suits in the district court apply to an election contest in the district court." TEX. ELEC.CODE ANN. § 231.002 (Vernon 2003). In view of this,

election contests should be governed by all of the Rules of Civil Procedure, including the "protective features of special exception procedure." *Herring,* 513 S.W.2d at 10.

Because I believe the original petition contained a general allegation relating to irregularities in the casting of votes and the amended petition merely provided additional detail in response to Cuellar's special exceptions, I disagree with the majority's conclusion that Rodriguez's amended petition contained a "new" cause of action or basis for the contest. Accordingly, I respectfully dissent.

Dissenting opinion by ALMA L. LÓPEZ, Chief Justice.

I fully join in the Concurring and Dissenting Opinion authored by Justice Catherine Stone with regard to the merits of the issues raised in this appeal. I write separately to address the reasons I believe this court should not have granted en banc reconsideration of this appeal.

Rule 41.2(c) of the Texas Rules of Appellate Procedure states:

> *En Banc Consideration Disfavored.* En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration. A vote to determine whether a case will be heard or reheard en banc need not be taken unless a justice or the court requests a vote. If a vote is requested and a majority of the court's members vote to hear or rehear the case en banc, the en banc court will hear or rehear the case. Otherwise, a panel of the court will consider the case.

TEX.R.APP. P. 41.2(c). The en banc majority opinion states that en banc reconsideration was granted "[b]ecause of the high

degree of public interest in this case and to maintain uniformity of the court's decisions."

The fundamental difference of opinion between the majority and dissenting justices is whether the general allegation of "irregularities in the casting [ ] of votes" in Rodriguez's original petition was sufficient to state a cause of action. The en banc majority's global statement does little to clarify how the holding by the panel majority failed to "maintain uniformity of the court's decisions." In fact, the en banc majority's global statement is particularly puzzling since the en banc majority opinion cites no San Antonio decision to support its analysis of the issue. Certainly, Cuellar's contention that the panel majority opinion was contrary to *Tiller v. Martinez*, 974 S.W.2d 769 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.), cannot support the granting of en banc reconsideration since the en banc majority opinion distinguishes *Tiller* and disagrees with Cuellar's contention.

This leaves us with the en banc majority's belief that en banc reconsideration was warranted "because of the high degree of public interest in this case." The en banc majority must necessarily equate the "high degree of public interest" to an "extraordinary circumstance." However, an assertion that an issue is "important" is insufficient to rise to the level of an extraordinary circumstance. *Thompson v. State*, 89 S.W.3d 843, 856 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (Jennings, J., concurring in denial of en banc reconsideration); *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 424–25 (Tex. App.-Houston [14th Dist.] 2001, pet. granted, judg. vacated) (Frost, J., concurring in denial of en banc consideration). In addition, the degree of public interest in this case is not higher because of the panel majority's opinion. The degree of public interest has been the same since the appeal was originally filed in this court; therefore, it would follow that the circumstances were extraordinary when the appeal was originally filed. Upon the filing of the appeal, any of the en banc majority justices could have requested en banc consideration at that time. *See* Tex.R.App. P. 41.2(c). None of the justices, however, made such a request. As a result, the parties and their attorneys were deprived of the benefit of presenting their argument to the en banc court instead of to a panel and of responding to all of the justices' questions regarding the law and its application to this case. If the "high degree of public interest" is our new standard, I can only wonder if this means that every appeal that attracts media attention now warrants en banc consideration.

Finally, the inability to seek supreme court review could not meet the extraordinary circumstances standard since panels of this court previously have decided cases which the supreme court was precluded from reviewing by section 232.014(f) of the Texas Election Code. *See, e.g., Gutierrez v. Montemayor*, No. 04–00–00517–CV, 2000 WL 33225302 (Tex.App.-San Antonio Dec.29, 2000, no pet.) (not designated for publication); *Reyes v. Zuniga*, 794 S.W.2d 842 (Tex.App.-San Antonio 1990, no writ). In both of those cases, unlike the instant case, the panel stated that it would not entertain any motion for rehearing. 2000 WL 33225302, at *1; *Reyes*, 794 S.W.2d at 846; *see also Reese v. Duncan*, 80 S.W.3d 650, 665 (Tex.App.-Dallas 2002, pet. denied) (panel decision refusing to entertain motion for rehearing in election contest case pursuant to section 232.014(e)); *Honts v. Shaw*, 975 S.W.2d 816, 824 (Tex. App.-Austin 1998, no pet.) (same); *Green v. Reyes*, 836 S.W.2d 203, 214 (Tex.App.-Houston [14th Dist.] 1992, no pet.) (same in appeal of election contest involving Democratic nomination for United States

Representative to the 29th Congressional District).

I submit that the real reason a majority of the en banc court granted en banc reconsideration of this appeal is because the en banc majority simply disagreed with the result that the panel majority reached. This clearly is not a proper standard for granting en banc consideration. *See, e.g., Madeksho v. Abraham, Watkins, Nichols & Friend,* 112 S.W.3d 679, 694 n. 4 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (Hudson, J., dissenting); *Thompson v. State,* 89 S.W.3d 843, 856 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (Jennings, J., concurring in denial of en banc reconsideration); *Schindler Elevator Corp. v. Anderson,* 78 S.W.3d 392, 424–25 (Tex. App.-Houston [14th Dist.] 2001, pet. granted, judg. vacated) (Frost, J., concurring in denial of en banc consideration). In fact, the author of the en banc majority opinion in this appeal has previously criticized this court for applying such a standard. *Crestway Care Center, Inc. v. Berchelmann,* 945 S.W.2d 872, 874–75 (Tex.App.-San Antonio 1997 orig. proceeding [leave denied]) (Green, J., dissenting)[2]. The failure to follow Rule 41.2(c) "undermines the legitimacy of our en banc opinions by suggesting there are other, unstated, bases, for engaging in full court review, and withdrawing the panel opinion." *University of Texas Medical Branch at Galveston v. Barrett,* 112 S.W.3d 815, 820 (Tex.App.-

Houston [14th Dist.] 2003, pet. filed) (Anderson, J., dissenting).

For the foregoing reasons, I respectfully dissent to the decision to grant en banc reconsideration in this appeal.

---

**2.** In *Crestway Care Center, Inc. v. Berchelmann,* Justice Green states:

> The panel of justices assigned for the consideration of Relator's motion for leave to file a petition for writ of mandamus (Justices Green, Duncan, and Angelini) granted the motion for leave and heard oral arguments in the matter. After reviewing the briefing and arguments, the panel granted the petition and issued a conditional writ of mandamus. The panel decision has now been reversed en banc merely because "[a] majority of the entire court disagrees with

the panel's interpretation of the law." *Crestway Care Center v. Berchelmann* at 873 (Tex.App.-San Antonio 1997, orig. proceeding)(en banc). *But see* TEX. R. APP. P. 79(e) ("A rehearing or rehearing en banc is not favored and should not be ordered unless consideration by the full court is necessary to secure or maintain uniformity of its decisions or in extraordinary circumstances.") For this reason alone, we dissent from the majority's order granting rehearing en banc.